BAKER & HOSTETLER LLP
GERALD FERGUSON (0370)
GEORGE A. STAMBOULIDIS (0240)
45 Rockefeller Plaza
New York, NY 10111
Telephone:   212.589.4200
Facsimile:    212.589.4201
*Attorneys for Plaintiffs*
*United States Polo Association,*
*Inc., and USPA Properties, Inc.*

'09 CIV 9476

RECEIVED
NOV 13 2009
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES POLO ASSOCIATION, INC., and USPA PROPERTIES, INC., | INDEX NO. |
|---|---|
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| -against- | |
| PRL USA HOLDINGS, INC., | |
| Defendant. | |

The United States Polo Association (the "U.S. Polo Assn."), USPA Properties, Inc. ("Properties"), (collectively the "U.S. Polo Assn. Plaintiffs"), through their attorneys, Baker & Hostetler LLP, against Defendant PRL USA Holdings, Inc. ("PRL" or "Defendant") for their complaint seeking a declaratory judgment, allege as follows:

### SUMMARY OF ALLEGATIONS

1.      This Complaint for Declaratory Judgment arises from the efforts of PRL, a fashion designer, to prevent the U.S. Polo Assn., the governing body of the sport of polo in the United States, from using the popular and well recognized U.S. Polo Assn. trademarks on

fragrance products. Beginning in 1984, PRL has consistently sought to prevent U.S. Polo Assn. from establishing and expanding a trademark licensing program in the United States and worldwide. In the past quarter of a century, PRL has commenced numerous legal proceedings against the U.S. Polo Assn., its licensees and retailers, has engaged in a letter writing campaign calculated to prevent retailers from selling U.S. Polo Assn. products, and has commenced numerous trademark office proceedings seeking to prevent registration of U.S. Polo Assn.'s trademarks or to cancel its registrations. Despite PRL's vigorous opposition, the U.S. Polo Assn. has established a successful, worldwide licensing program. The primary trademarks of this licensing program are the U.S. POLO ASSN. and a logo that portrays two mounted horsemen competing in open play (the "Double Horsemen Trademark", a copy of which is attached as Exhibit A). Products bearing U.S. Polo Assn. trademarks are sold in all 50 states in over 5,000 stores, including major national chains such a Sears, Ross, Peebles, Goodys, Dr. J's and Burlington Coat Factory. DNR, the leading apparel industry magazine, has recognized the U.S. Polo Assn. brand as one of "America's Top 50 Mega Brands" for men's apparel and accessories. Regardless of the success of the U.S. Polo Assn. brand, PRL has also continued to prosper, and consumers have distinguished between the U.S. Polo Assn. and the PRL trademarks. The U.S. Polo Assn.'s right to conduct a clothing licensing program was fully vindicated by the United States Court of Appeals for the Second Circuit in 2008, when the Second Circuit affirmed an Order of the District Court recognizing the right of the U.S. Polo Assn. to conduct a clothing licensing program using three presentations of its Double Horsemen Ttrademark. Unfortunately, despite the demonstrated and judicially recognized ability of U.S. Polo Assn. and PRL to coexist in the marketplace for clothing without creating a likelihood of consumer confusion, PRL continues to oppose U.S. Polo Assn. Plaintiffs' efforts to license the U.S. POLO ASSN. and

Double Horsemen Trademark in the closely related marketplace for fragrances. PRL's opposition significantly impedes the ability of the U.S. Polo Assn. to fully exploit its valuable trademarks. For these reasons, U.S. Polo Assn. seeks a Declaratory Judgment that it has the right to license and sell in the United States fragrance products and packaging bearing U.S. POLO ASSN., the Double Horsemen Trademark and 1890 (the year of the founding of the U.S. Polo Assn.) as shown on the product packaging and container depicted in Exhibit B (the "Double Horsemen Fragrances"), and to register and use the trademarks depicted in Exhibits C, D and E in International Class 3 for use on fragrances.

## Jurisdiction and Venue

2. This action is for a declaratory judgment, injunctive relief and attorneys' fees. Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§1331, 1332 and 1338 (a) and (b), 2201 and 2202 and under principles of pendent jurisdiction. The matter and controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## The Parties

4. The United States Polo Association, Inc. is a not-for-profit Illinois corporation having an office and place of business at 4037 Iron Works Parkway, Suite 110, Lexington, Kentucky 40511; governs the sport of Polo in the United States and Canada; and owns certain valuable trademarks bearing its name and images of the sport of polo.

5. USPA Properties, Inc. is an Illinois corporation having an office and place of business at 771 Corporate Drive, Suite 430, Lexington, Kentucky 40503; is a wholly-owned subsidiary of the U.S. Polo Assn.; and manages the U.S. Polo Assn.'s licensing program worldwide.

6. Upon information and belief, PRL is a Delaware corporation having an office and place of business at 650 Madison Avenue, New York, New York; has committed acts complained of in this judicial district; is transacting and doing business within this judicial district; is subject to the laws of the State of New York and Rule 4 of the Federal Rules of Civil Procedure; and claims to be, and in certain circumstances is, the owner of various trademarks associated with Ralph Lauren, and with the word "polo."

**Facts Common to All Claims for Relief**

A. **The U.S. Polo Assn. Governs Sport and Conducts Licensing Program**

7. The U.S. Polo Assn., established in 1890, is the governing body of the sport of polo in the United States. As such, it promulgates and revises the rules for the sport of polo, organizes the principal tournaments, establishes all player handicaps, and trains and employs professional umpires. Additionally, the U.S. Polo Assn. supports 36 college club polo programs as well as instructors who travel extensively teaching Polo. The U.S. Polo Assn. is comprised of approximately 230 clubs, having approximately 3,600 individual members. Since at least 1924, the U.S. Polo Assn. has used the name "United States Polo Association", and standard abbreviations of that name, to identify itself.

8. The U.S. Polo Assn. currently owns numerous registered trademarks worldwide, the majority of which contain the words "United States Polo Association," or an abbreviation thereof, for use on such diverse goods as pants, jackets, shirts, active wear, footwear, tailored goods, underwear, small leather goods, watches, luggage, hand bags, backpacks, and briefcases.

9. At the present, the U.S. Polo Assn. owns several hundred trademark registrations in the United States, the European Union, and in over 95 foreign countries. U.S. trademark registrations owned by the U.S. Polo Assn. include:

    a.    Registration No. 3,370,932 for USPA and the Double Horsemen Trademark in International Class 25;

    b.    Registration No. 3,598,829 for the Double Horsemen Trademark in International Classes 14, 18 and 25;

    c.    Registration No. 2,188,594 for the Double Horsemen Trademark in International Class 14;

    d.    Registration No. 2,991,639 for U.S. POLO ASSN. SINCE 1890 in International Class 25;

    e.    Registration No. 3,383,427 for U.S. POLO ASSN. SINCE 1890 in International Classes 14 and 18;

    f.    Registration No. 2,908,391 for U.S. POLO ASSN. in International Classes 14 and 18; and

    g.    Registration No. 3,367,242 for U.S. POLO ASSN. in International Class 25.

A complete list of U.S. trademark registrations currently owned by the U.S. Polo Assn. is attached as Exhibit F.

    10.    The U.S. Polo Assn. licenses its worldwide trademark rights to Properties, which manages the U.S. Polo Assn.'s licensing program worldwide. Properties pays the U.S. Polo Assn. royalties for the use of the U.S. Polo Assn.'s trademarks. The U.S. Polo Assn. uses these royalties to promote and support the sport of polo.

    11.    Beginning in 1984, U.S. Polo Assn. Plaintiffs and their licensees have been manufacturing, marketing, selling and distributing products bearing the marks in interstate commerce and/or foreign commerce on such diverse goods as pants, jackets, shirts, active wear,

footwear, tailored goods, underwear, small leather goods, watches, luggage, hand bags, backpacks, and briefcases.

12. Products bearing the U.S. Polo Assn.'s trademarks are sold to consumers in over 5,000 retail stores throughout the United States, including major national chains such as Sears, Ross, Peebles, Goodys, Dr. J's, and Burlington Coat Factory.

13. The U.S. Polo Assn. Plaintiffs and their licensees have devoted substantial time, effort, and millions of dollars, to develop the U.S. Polo Assn.'s trademarks and to promote products bearing these trademarks. As a direct result of such efforts and expenditures, U.S. Polo Assn. branded products have gained significant consumer recognition in the marketplace. DNR magazine has recognized the U.S. Polo Assn. brand as one of "America's Top 50 Mega Brands," based upon a survey it conducted of 16,444 male consumers of apparel and accessory products in the United States.

**B.  PRL's Efforts to Prevent or Contain U.S. Polo Assn.'s Licensing Activities**

14. The U.S. Polo Assn.'s successful development of its brand has occurred despite regular and vigorous efforts by PRL to prevent or contain the development of the U.S. Polo Assn. brand.

> **(i)  1984 Order Recognizes U.S. Polo Assn.'s Right to Conduct Licensing Program Using its Name and Equestrian Symbol**

15. A predecessor to PRL and the U.S. Polo Assn. were parties to a lawsuit in 1984, titled *United States Polo Association, Inc. et al. v. Polo Fashions Inc., et al.* 84 Civ. 1142 (LBS). That lawsuit resulted in a final order issued in December 1984 which created a safe harbor for the U.S. Polo Assn. to use its name and an equestrian symbol that was distinct from PRL's equestrian symbol (the "1984 Order").

16. In its opinion issued in conjunction with the 1984 Order, the Court encouraged U.S. Polo Assn. to develop its own distinct licensing program with the final words of the Court's opinion:

> In our vast society there in clearly room for both United States Polo Association and Polo Fashions, Inc. to engage in licensing activities including licensing activities in the apparel field which do not conflict with each other. Nothing contained in this opinion should be construed as precluding such activities.

17. From 1984 to the present, disregarding the Court's finding that there is room in the world for both the governing body of the sport of polo, and fashion designer Ralph Lauren, to conduct licensing programs, PRL has consistently sought to prevent the U.S. Polo Assn. from developing a successful licensing program.

18. Since the issuance of the 1984 Order, PRL has commenced two United States District Court actions against the U.S. Polo Assn., has sued the U.S. Polo Assn.'s master licensee for the United States, has sued numerous U.S. retailers in connection with their sale of U.S. Polo Assn. products, has sent letters threatening litigation to many U.S. retailers in connection with their sale of U.S. Polo Assn. products, and has commenced several trademark office proceedings before the United States Patent and Trademark Office ("USPTO") opposing registration of U.S. Polo Assn. trademarks.

    (ii)    **U.S. Polo Assn. Adopts Distinct Double Horsemen Trademark**

19. In 1996, the U.S. Polo Assn. first applied to the USPTO for registration of the Double Horsemen Trademark for use on clothing (International Class 25), leather goods (International Class 18) and watches (International Class 14).

20. Contrary to its regular practice of opposing U.S. Polo Assn. trademark registrations, PRL made a conscious decision not to oppose registration of the Double Horsemen Trademark in classes 14, 18, and 25 in the United States.

21. Upon becoming aware of PRL's decision not to oppose its registration of the Double Horsemen Trademark in the United States, the U.S. Polo Assn. Plaintiffs authorized their master licensee for the United States, an affiliate of Jordache, Ltd. ("Jordache"), to develop a line of clothing and accessories featuring the Double Horsemen Trademark, U.S. Polo Assn., and other U.S. Polo Assn. trademarks. Jordache developed and launched this line with considerable nationwide success in February of 1998.

22. Also in 1998, the U.S. Polo Assn. Plaintiffs prepared to introduce into the United States a line of perfume products that would be closely connected with its clothing and accessories licensing program.

23. On November 25, 1998, U.S. Polo Assn. Properties filed with the United States Patent and Trademark Office an application to register U.S. POLO ASS'N 1890 and Double Horsemen Trademark (Serial No. 75/595,904) for use on "cosmetics and fragrances" (International Class 3), attached hereto as Exhibit G.

24. The USPTO found the U.S. POLO ASS'N 1890 and Double Horsemen Trademark to be distinct from other registered trademarks, including PRL's registered trademarks, and published it in its Official Gazette to provide third parties with an opportunity to oppose registration.

### (iii) PRL Seeks to Prevent U.S. Polo Assn. From Licensing Its Distinct Double Horsemen Trademark

25. On or about February 4, 2000, PRL and its licensee for perfumes and related products, filed a notice of opposition with the USPTO requesting that the USPTO refuse to register U.S. POLO ASS'N 1890 and Double Horsemen Trademark for cosmetics and fragrances.

26. On or about July 11, 2000, PRL filed an amended complaint in the Southern

- 8 -

District of New York against U.S. Polo Assn. Plaintiffs and several affiliates of Jordache alleging federal trademark infringement under the Lanham Act, federal trademark dilution under the Lanham Act, and common law trademark infringement and unfair competition under the law of the State of New York against all actual and intended uses of U.S. Polo Assn. trademarks. This lawsuit, which initially involved a lawsuit brought by PRL against a retailer of U.S. Polo Assn. clothing, is captioned *PRL USA Holdings, Inc. v. United Polo Association, Inc.* 99 CV 10199 (GBD) (the "Double Horsemen Litigation").

27. On or about July 31, 2000, PRL and PRL's perfume licensee filed a motion, on consent, with the PTO's Trademark Trial and Appeal Board ("TTAB") to suspend PRL's pending opposition to registration of the U.S. Polo Assn.'s application to register U.S. POLO ASS'N 1890 and Double Horsemen Trademark for use on "cosmetics and fragrances." The TTAB granted this motion on August 18, 2000.

28. In September 2003, the Court so-ordered and entered a Stipulation and Order of Dismissal with Prejudice, which had the effect of dismissing PRL's claims against the U.S. Polo Assn. Plaintiffs involving the U.S. POLO ASSN. mark, and related word marks, while reserving for trial PRL's claims relating to the U.S. Polo Assn.'s use of four presentations of the Double Horsemen Trademark, on clothing, leather goods, watches and polo-related sporting equipment.

        **(iv)   Jury, District Court and Second Circuit Vindicate U.S. Polo Assn.'s Right to License Double Horsemen Trademark**

29. On October 20, 2005, after a trial spanning three weeks, the jury returned with a verdict in the Double Horsemen Litigation, finding that three presentations of the U.S. Polo Assn.'s Double Horsemen Trademark do not infringe any trademark rights of PRL when used on clothing, leather goods, jewelry watches, and polo related sporting goods. These three permitted presentations include the outline version of the Double Horsemen attached hereto as Exhibit A.

30. The Court entered a Final Judgment and Order reflecting the jury's findings in October 2005, a copy of which is attached as Exhibit H.

31. After considering post-trial briefing by the parties, the Court denied PRL's motion for a new trial through entry of a Memorandum Decision and Order in July 2006, a copy of which is attached as Exhibit I (the "2006 Order").

32. PRL appealed the 2006 Order to the United States Court of Appeals for the Second Circuit, and the Second Circuit affirmed the order and judgment of the District Court on March 4, 2008. *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109 (2d Cir. 2008).

33. Although the Second Circuit's affirmation of the 2006 Order finally liberated the U.S. Polo Assn. from PRL's efforts to impede the U.S. Polo Assn.'s clothing licensing program, and PRL has continued to thrive despite the success of the U.S. Polo Assn.'s licensing program, PRL nonetheless has continued to oppose and impede U.S. Polo Assn.'s efforts to develop a closely related perfume licensing program. Expanding a clothing licensing program to include a perfume licensing program is a natural brand extension. Many popular clothing and luxury brands have extended their brand to include a fragrance line, and consumers recognize the connection between a fragrance line and a related clothing or luxury goods line. Consumers who regularly recognize the difference between the U.S. Polo Assn. brand and the PRL brand on clothing will just as readily recognize those same differences on fragrances.

      (v)    **U.S. Polo Assn. Extends Its Clothing Licensing Program to Include Closely Related Fragrance Licensing Program**

34. In May 2008, U.S. Polo Assn. requested that the USPTO end suspension of opposition proceedings involving U.S. POLO ASS'N 1890 and Double Horsemen Trademark for cosmetics and fragrances.

35. Thereafter, U.S. Polo Assn. authorized Jordache to extend the U.S. Polo Assn.

clothing brand by developing a closely-related line of fragrances, using the Double Horsemen Trademark, U.S. POLO ASSN. and other U.S. Polo Assn. trademarks.

36. Jordache assigned a team to develop a concept for a U.S. Polo Assn. fragrance line and, in June of 2009, submitted to Properties for approval, a fragrance container and packaging design featuring U.S. POLO ASSN., 1890 and the outline Double Horsemen Trademark – the Double Horsemen Fragrances shown in Exhibit B. Properties approved this design and, thereafter, Jordache commenced production of the Double Horsemen Fragrances. Jordache has received shipment of the Double Horsemen Fragrances and is prepared to commence sale immediately.

37. In May 2009, U.S. Polo Assn. filed an application with the USPTO to register U.S. POLO ASSN. 1890 and Double Horsemen Trademark for fragrances (Serial No. 77/738,105); a copy of the printout from the USPTO database reflecting this application is attached as Exhibit C. In June 2009, U.S. Polo Assn. filed applications to register U.S. POLO ASSN. for fragrances (Serial No. 77/760,071)(a copy of the printout from the USPTO database reflecting this application is attached as Exhibit D) and the outline Double Horsemen Trademark for fragrances (Serial No. 77/760,033)(a copy of the printout from the USPTO database reflecting this application is attached as Exhibit E). The USPTO has analyzed the trademark registry and found that all of these trademarks do not create a likelihood of confusion with respect to all other federally registered trademarks, including trademarks owned by PRL. Based on its analysis, the USPTO approved the marks shown in Exhibit C, D and E for publication in the USPTO's Official Gazette.

38. In July 2009, U.S. Polo Assn. elected to withdraw its application for registration of U.S. POLO ASS'N and Double Horsemen Trademark for cosmetics and fragrances, and

instead elected to pursue its other pending registrations. PRL and its fragrance licensee consented to the termination of opposition proceeding they brought against U.S. POLO ASS'N 1890 and Double Horsemen Trademark, on the condition that this consent would not prejudice to PRL's right to oppose the pending applications for the marks shown in Exhibit C, D and E for use on fragrances.

        **(vi)    Continued Opposition From PRL Undermines U.S. Polo Assn. Efforts to Launch Fragrance Line Related to Clothing Line**

39.    In and around April 2009, U.S. Polo Assn. initiated negotiations with PRL seeking to have PRL withdraw its opposition to the U.S. Polo Association's use of its trademarks on fragrances. In and around July 2009, PRL delegated the lead role in these negotiations to its fragrance licensee. Throughout these extensive negotiations, PRL objected to the U.S. Polo Assn.'s use of the Double Horsemen Trademark on fragrance products. On October 19, 2009, U.S. Polo Assn. submitted a detailed written settlement proposal to PRL and its fragrance licensee, which would have permitted the U.S. Polo Assn to use the trademarks shown in Exhibits C, D and E on fragrances. PRL, through its perfume licensee, rejected this settlement proposal. PRL has declined to offer any counter proposal to USPA's written settlement offer.

40.    PRL is currently prosecuting an opposition proceeding in the European Union's trademark office that seeks to prevent the registration of the Double Horsemen Trademark for use on fragrances in the European Union.

41.    In October 2009, PRL and its fragrance licensee filed with the TTAB a request for an extension time to oppose the U.S. Polo Assn.'s application to register U.S. POLO ASSN. 1890 and Double Horsemen Trademark, as shown in Exhibit C, for cosmetics and fragrances.

42.    PRL's steadfast opposition to the U.S. Polo Assn.'s use of its Double Horsemen Trademark on fragrances significantly impairs the ability the U.S. Polo Assn.'s licensee --

Jordache -- to distribute and sell Double Horsemen Fragrance. Jordache has informed the U.S. Polo Assn. that it will not offer fragrance products to many retailers of U.S. Polo Assn. because, based on prior dealings with these retailers, Jordache believes these retailers will refuse to carry any product objected to by PRL. Jordache's further informed the U.S. Polo Assn. that this belief is based, in part, on PRL's past practice of suing and otherwise harassing U.S. Polo Assn. retailers.

43. Furthermore, Jordache has approached potential sublicensees for fragrance products who have refused to sublicense the Double Horsemen Trademark, because of PRL's objection to the use of the Double Horsemen Trademark on Fragrances. These potential sublicensees have also informed Jordache that they fear they will be sued by PRL.

44. Jordache has arranged for the manufacture and delivery to Jordache of Double Horsemen Fragrances. Jordache has these products on hand and is prepared to commence the sale and delivery of these products immediately. PRL's express opposition to the U.S. Polo Assn. Plaintiffs' sale and distribution of Double Horsemen Fragrances severely undermines the ability of Jordache to sell and deliver these products. PRL has engaged in a course of conduct which has brought it into adversarial conflict with U.S. Polo Assn. Plaintiffs.

45. U.S. Polo Assn. Plaintiffs lack an adequate remedy at law.

**First Claim of Relief**

46. The allegations of paragraphs 1 through 45 are repeated and incorporated herein.

47. The U.S. Polo Assn. Plaintiffs have authorized their United States licensee to sell and distribute the Double Horsemen Fragrances depicted in Exhibit B and to develop other fragrance products bearing the trademarks depicted in Exhibits C, D and E, and intend to continue to do so.

48. Based on the foregoing allegations, there exists between the parties a controversy of sufficient immediacy and reality to warrant declaratory relief.

49. Pursuant to 28 U.S.C. §2201, U.S. Polo Assn. Plaintiffs are entitled to the issuance of a declaratory judgment declaring that U.S. Polo Assn. Plaintiffs have the right to license and sell in the Unites States, fragrance products and packaging bearing U.S. POLO ASSN., the Double Horsemen Trademark and 1890 as depicted in Exhibit B, and other products bearing the marks identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77/760,071 on the products identified in those applications.

### Second Claim of Relief

50. The allegations of paragraphs 1 through 49 are repeated and incorporated herein.

51. The U.S. Polo Assn. Plaintiffs have authorized their United States licensee to sell and distribute the Double Horsemen Fragrances depicted in Exhibit B and to develop other products bearing the trademarks depicted in Exhibits C, D and E on fragrances, and intend to continue to do so.

52. Based on the foregoing allegations, there exists between the parties a controversy of sufficient immediacy and reality to warrant declaratory relief.

53. Pursuant to 28 U.S.C. §2201, the U.S. Polo Assn. Plaintiffs are entitled to the issuance of a declaratory judgment declaring that their use and licensing of fragrance products and packaging bearing U.S. POLO ASSN., the Double Horsemen Trademark and 1890, as depicted in Exhibit B, and of the marks identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77/760,071, does not violate Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a) and (c), nor constitute infringement, dilution or unfair competition with respect to the rights of PRL.

### Third Claim of Relief

54. The allegations of paragraphs 1 through 53 are repeated and incorporated herein.

55. The U.S. Polo Assn. Plaintiffs have authorized their United States licensee to sell and distribute the Double Horsemen Fragrances depicted in Exhibit B and to develop other fragrance products bearing the trademarks depicted in Exhibits C, D and E, and intend to continue to do so.

56. Based on the foregoing allegations, there exists between the parties a controversy of sufficient immediacy and reality to warrant declaratory relief.

57. Pursuant to 28 U.S.C. §2201, Plaintiffs are entitled to the issuance of a declaratory judgment declaring that their use and licensing of fragrance products and packaging bearing U.S. POLO ASSN., the Double Horsemen Trademark and 1890, as depicted in Exhibit B, and of the marks identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77/760,071, does not violate the common law of the State of New York relating to trademark infringement, unfair competition and trademark dilution.

### PRAYER FOR RELIEF

WHEREFORE, U.S. Polo Assn. Plaintiffs pray for relief and judgment as follows:

(a) declaring that the U.S. Polo Assn. Plaintiffs have the right to license and sell in the Unites States, fragrance products and packaging bearing U.S. POLO ASSN., the Double Horsemen Trademark and 1890, as depicted on the product depicted in Exhibit B, and the marks identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77/760,071;

(b) declaring that the U.S. Polo Assn. Plaintiffs' use and licensing of marks depicted in Exhibit B, and as identified in Trademark Application Serial Nos. 77/738,105, 77/760,033, and 77/706,071, does not violate Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a) and (c),

nor constitute infringement, dilution or unfair competition with respect to PRL;

(c) declaring that U.S. Polo Assn. Plaintiffs' use and licensing of marks depicted in Exhibit B, and as identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77,760,071 does not violate the common law of this State relating to trademark infringement, unfair competition and trademark dilution;

(d) for an order directing the United States Patent and Trademark Office to register Trademark Application Serial Nos. 77/738,105, 77/760,033, and 77/760,071.

(d) for reasonable attorneys' fees;

(e) for all costs and disbursements; and,

(f) for such other and further relief as this Court may deem just and proper under the circumstances.

Dated: November 13, 2009

Respectfully submitted,

*Gerald J. Ferguson*
Gerald Ferguson (0370)
George A. Stamboulidis (0240)

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111

Attorneys for Plaintiffs
UNITED STATES POLO ASSOCIATION, INC., and USPA PROPERTIES, INC.