# Exhibit A



# Exhibit B

# *FRONT ART*



# *BACK ART*





# Exhibit C



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Nov 13 03:57:38 EST 2009*

[ TESS HOME ] [ NEW USER ] [ STRUCTURED ] [ FREE FORM ] [ BROWSE DICT ] [ SEARCH OG ] [ BOTTOM ] [ HELP ]

[ Logout ] Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

[ TARR Status ] [ ASSIGN Status ] [ TDR ] [ TTAB Status ] *( Use the "Back" button of the Internet Browser to return to TESS)*

| | |
|---|---|
| Word Mark | U.S. POLO ASSN. 1890 |
| Goods and Services | IC 003. US 001 004 006 050 051 052. G & S: cosmetics and fragrances, namely, eau de toilette, cologne and perfume, aftershave, body spray, shampoo, skin, hair, bath, shower and shaving soaps, creams, lotions and non-medicated gels, and deodorants and anti-perspirants |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 02.01.19 - Athletes (men); Golfer; Men, athletes, strongmen; Strongmen<br>02.07.01 - Groups, males<br>02.09.17 - Humans, including men, women and children, depicted riding horses and other animals; Riding animals, humans<br>02.09.19 - Diving, humans; Humans, including men, women and children, depicted playing games or engaged in other sports; Playing games or sports, humans<br>09.05.25 - Batting helmets; Caps, nurses; Caps, swimming; Dunce caps; Football helmets; Helmets, athletic; Helmets, construction; Helmets, military; Helmets, protective; Safety helmets<br>21.03.04 - Croquet mallets; Lacrosse sticks; Mallets (sports); Mallets, croquet; Mallets, polo; Polo mallets |
| Serial Number | 77738105 |
| Filing Date | May 15, 2009 |
| Current Filing Basis | 1B |
| Original Filing Basis | 1B |
| Published for Opposition | October 6, 2009 |
| Owner | (APPLICANT) United States Polo Association, Inc. CORPORATION ILLINOIS Ste. 430 771 Corporate Dr. Lexington KENTUCKY 40503 |
| Attorney of Record | Robert B.G. Horowitz, Esq. |
| Prior Registrations | 2188594;3383427;3598829;AND OTHERS |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "U.S.", "ASSN." AND "1890" APART FROM THE MARK AS SHOWN |
| Description of Mark | Color is not claimed as a feature of the mark. |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

# Exhibit D



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Nov 13 03:57:38 EST 2009*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# U.S. POLO ASSN.

| | |
|---|---|
| **Word Mark** | U.S. POLO ASSN. |
| **Goods and Services** | IC 003. US 001 004 006 050 051 052. G & S: Cosmetics and fragrances, namely eau de toilette, cologne and perfume, after shave, body spray, shampoo, skin cream, skin lotion, non-medicated skin gels, hair cream, hair lotion, hair gel, bath lotion, bath cream, bath soap, bath gel, shower cream, shower gel, shaving soaps, shaving creams, shaving lotions, shaving gels, deodorants and anti-perspirants |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77760071 |
| **Filing Date** | June 15, 2009 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) United States Polo Association CORPORATION ILLINOIS 771 Corporate Drive, Suite 430 Lexington KENTUCKY 40503 |
| **Attorney of Record** | Robert B.G. Horowitz, Esq. |
| **Prior Registrations** | 2908391;2991639;3367242;AND OTHERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "U.S. AND ASSN" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

# Exhibit E



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Nov 13 03:57:38 EST 2009*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TARR Status | ASSIGN Status | TDR | TTAB Status *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Goods and Services** | IC 003. US 001 004 006 050 051 052. G & S: Cosmetics and fragrances, namely eau de toilette, cologne and perfume, after shave, body spray, shampoo, skin cream, skin lotion, non-medicated skin gels, hair cream, hair lotion, hair gel, bath lotion, bath cream, bath soap, bath gel, shower cream, shower gel, shaving soaps, shaving creams, shaving lotions, shaving gels, deodorants and anti-perspirants |
| **Mark Drawing Code** | (2) DESIGN ONLY |
| **Design Search Code** | 02.01.19 - Athletes (men); Golfer; Men, athletes, strongmen; Strongmen<br>02.01.31 - Men, stylized, including men depicted in caricature form<br>02.07.01 - Groups, males<br>02.09.17 - Humans, including men, women and children, depicted riding horses and other animals; Riding animals, humans<br>03.05.01 - Horses<br>03.05.24 - Stylized horses, donkeys, zebras<br>09.05.25 - Batting helmets; Caps, nurses; Caps, swimming; Dunce caps; Football helmets; Helmets, athletic; Helmets, construction; Helmets, military; Helmets, protective; Safety helmets<br>21.03.04 - Croquet mallets; Lacrosse sticks; Mallets (sports); Mallets, croquet; Mallets, polo; Polo mallets |
| **Serial Number** | 77760033 |
| **Filing Date** | June 15, 2009 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) United States Polo Association CORPORATION ILLINOIS 771 Corporate Drive, Suite 430 Lexington KENTUCKY 40503 |
| **Attorney of Record** | Robert B.G. Horowitz, Esq. |
| **Prior Registrations** | 2188594;3370932;3598829 |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of a stylized depiction of two polo players participating in a polo match. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead** | LIVE |

# Exhibit F

## Basic Info

| Country | Trademark | Appl # | Date Filed | Date Published | Status | Reg. # | Renewal Date | Classes | |
|---|---|---|---|---|---|---|---|---|---|
| United Stat | 03 | 76469189 | 11/22/2002 | 3/15/2005 | Registered | 2,932,332 | 3/15/2025 | 25 | 03 |
| United Stat | Black DH w/USPA | 78/744,331 | 11/1/2005 | 8/6/2006 | Registered | 3,370,932 | 8/6/2016 | 25 | U.S.P.A. BRONZE TROPHY |
| United Stat | BRONZE TROPHY | 77/251,142 | 8/9/2007 | 7/15/2018 | Registered | 3,466,111 | 7/15/2024 | 41 | |
| United Stat | DOUBLE HORSEMEN | 75/077,531 | 5/28/1996 | 9/8/1998 | Registered | 2,188,594 | 9/8/2018 | 14 | |
| United Stat | DOUBLE HORSEMEN | 75/646,825 | 2/23/1999 | | Registered | 3,598,829 | 3/30/2019 | 14  18  25 | |
| United Stat | HORSE HEAD IN CIRCLE | 74/283,368 | 6/10/1992 | 7/27/1993 | Registered | 1,784,585 | 7/27/2023 | 42 | |
| United Stat | NATIONAL COPPER CUP | 77/251,066 | 8/9/2007 | | Registered | 3,466,112 | 7/15/2024 | 41 | NATIONAL COPPER CUP |
| United Stat | NATIONAL TWENTY GOAL | 77/251,136 | 8/9/2007 | 3/18/2008 | Registered | 3,400,345 | 3/18/2018 | 41 | NATIONAL TWEN GOAL |
| United Stat | NORTH AMERICAN CUP | 77/251,109 | | 7/1/2008 | Registered | 3,456,970 | 7/1/2024 | 41 | NORTH AMERICAN CUP |

| Country | Trademark | Appl # | Date Filed | Date Published | Status | Reg. # | Renewal Date | Classes | |
|---------|-----------|--------|-----------|----------------|--------|--------|--------------|---------|---|
| United Stat | P SHIELD | 78/977,659 | 6/20/2003 | 1/16/2007 | Registered | 3,199,837 | 1/16/2017 | 18 |  |
| United Stat | P SHIELD | 78/265,277 | 6/20/2003 | 9/14/2004 | Registered | 2,932,764 | 3/15/2025 | 25 |  |
| United Stat | polo pony | 77/284,169 | 9/20/2007 | 2/12/2008 | Registered | 3,522,064 | 10/21/2018 | 25 |  |
| United Stat | SILVER CUP | 77/251,032 | 8/9/2007 | 6/3/2008 | Registered | 3,439,660 | 6/3/2028 | 41 |  |
| United Stat | U.S. OPEN POLO CHAMPIONSHIP | 77/163,517 | 12/13/2016 | 10/9/2007 | Registered | 3,358,528 | 12/25/2027 | 41 |  |
| United Stat | U.S. OPEN POLO CHAMPIONSHIP & HORSEHEAD | 74/280,661 | 6/2/1992 | 10/26/1993 | Registered | 1,801,139 | 10/26/2023 | 41 |  |
| United Stat | U.S. POLO ASSN. | 78/977,212 | 6/20/2003 | 1/8/2008 | Registered | 3,367,242 | 1/8/2018 | 14  18 |  |
| United Stat | U.S. POLO ASSN. | 78/265,305 | 6/20/2003 | 7/7/2004 | Registered | 2,908,391 | 12/7/2024 | 25 |  |
| United Stat | U.S. POLO ASSN. (FLAG) Since 1890 | 78/976,743 | 6/20/2003 | | Registered | 3,383,427 | 2/12/2028 | 14  18 |  |
| United Stat | U.S. POLO ASSN. (FLAG) Since 1890 | 78/265,229 | 6/20/2003 | 9/6/2005 | Registered | 2,991,639 | 9/6/2025 | 25 |  |

| Country | Trademark | Appl # | Date Filed | Date Published | Status | Reg. # | Renewal Date | Classes |
|---|---|---|---|---|---|---|---|---|
| United Stat | U.S. POLO ASSOCIATION | 78/883,236 | 5/15/2006 | 5/22/2007 | Registered | 3,497,213 | 9/22/2018 | 14 |
| United Stat | U.S. POLO/OLD HORSEHEAD LOGO | 78/063,141 | 5/11/2001 | 10/1/2002 | Registered | 2,629,444 | 10/1/2012 | 25 |
| United Stat | U.S. POLO/OLD HORSEHEAD LOGO | 73/194,464 | 3/31/1983 | 11/6/1984 | Registered | 1,304,236 | 11/6/2024 | 42 |
| United Stat | UNITED STATES ARENA CHAMPIONSHIP | 77/663,130 | 2/4/2009 | | Registered | 3,688,637 | 2/4/2019 | 41 |
| United Stat | UNITED STATES POLO ASSOCIATION | 74/487,495 | 2/7/1994 | 3/31/1998 | Registered | 2,147,956 | 3/31/2018 | 16 |
| United Stat | UNITED STATES POLO ASSOCIATION | 74/279,801 | 6/1/1992 | 11/16/1993 | Registered | 1,804,895 | 11/16/2023 | 42 |
| United Stat | UNITED STATES POLO ASSOCIATION/HORSEHEA D in circle | 74/859,979 | 6/18/1992 | 11/30/1993 | Registered | 1,808,138 | 11/30/2023 | 42 |
| United Stat | UNITED STATES POLO ASSOCIATION/HORSEHEA D in double | 260,196 | 4/29/1980 | 12/8/1981 | Registered | 1,181,651 | 12/8/2021 | 102 |
| United Stat | UNITED STATES POLO ASSOCIATION/HORSEHEA D LOGO | 74/487,496 | 2/7/1994 | 5/26/1998 | Registered | 2,160,727 | 5/26/2028 | 16 |
| United Stat | UNITED STATES POLO ASSOCIATION/HORSEHEA D outlined | 74/280,185 | 6/1/1992 | 7/20/1993 | Registered | 1,782,639 | 7/20/2023 | 16 |

| Country | Trademark | Appl # | Date Filed | Date Published | Status | Reg. # | Renewal Date | Classes | |
|---|---|---|---|---|---|---|---|---|---|
| United Stat | USPA | 74/786,919 | 2/7/1994 | 5/26/1998 | Registered | 2,160,726 | 5/26/2028 | 16 25 | USPA |
| United Stat | USPA | 74/834,438 | 6/10/1992 | 2/16/1993 | Registered | 1,753,042 | 2/16/2023 | 42 | USPA |
| United Stat | USPA GOLD CUP | 73/829,020 | 10/2/1989 | 6/19/1990 | Registered | 1,602,979 | 6/19/2020 | 41 | USPA GOLD CUP |

# Exhibit G



# Exhibit H

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRL USA HOLDINGS, INC., | No. 99 Civ. 10199 (GBD) |
|       **Plaintiff,** | |
|    **-against-** | <ins>**FINAL ORDER AND JUDGMENT**</ins> |
| UNITED STATES POLO ASSOCIATION, INC., UNITED STATES POLO ASSOCIATION PROPERTIES, INC., JORDACHE, LTD., L.V. ENTERPRISES, INC. and UNITED STATES POLO ASSOCIATION, LTD., | |
|       **Defendants.** | |

WHEREAS, this Action was commenced by plaintiff PRL USA Holdings, Inc. ("PRL") on or about March 10, 2000 (the "Complaint") against defendants United States Polo Association, Inc. ("USPA"), United States Polo Association Properties, Inc. (collectively, with USPA, the "USPA Parties") and Jordache, Ltd. ("Jordache"), L.V. Enterprises, Inc. ("LV") and United States Polo Association, Ltd. (collectively, with Jordache and LV, the "Jordache Parties");

WHEREAS, on April 26, 2000, the USPA Parties and Jordache Parties asserted affirmative defenses and counterclaims against PRL;

WHEREAS, on September 24, 2003, the Court entered a Stipulation and Order of Dismissal with Prejudice dismissing with prejudice the claims and counterclaims of the parties to this Action, with the sole exception of the claims asserted by PRL in the Complaint against the USPA Parties and the Jordache Parties (and the

affirmative defenses asserted by the USPA Parties and the Jordache Parties thereto) in Count I (Trademark Infringement Under the Lanham Act), Count III (Federal Trademark Dilution) and Count IV (Trademark Infringement and Unfair Competition Under the Common Law) as to the issue of whether the USPA Parties as licensor and the Jordache Parties as licensee have the right to use the "double horsemen" marks which are attached hereto as Exhibits 1-4 with respect to products listed in Class 14 (Class 14 being solely limited to watches), Class 18, Class 25 and Class 28 (Class 28 being solely limited to products that pertain to the sport of polo) of the International Schedule of Class of Goods and Services;

WHEREAS, the trial of the aforementioned claims and defenses was commenced on October 3, 2005 before the Court and a jury;

WHEREAS, on October 11, 2005, the Court granted the Rule 50 motion of the USPA Parties and the Jordache Parties and dismissed PRL's Federal Trademark Dilution claim (Count III of the Amended Complaint);

WHEREAS, on October 20, 2005, the jury rendered its decision and returned its unanimous verdict; and

WHEREAS, the USPA Parties and the Jordache Parties have voluntarily withdrawn their affirmative defenses of estoppel by laches, waiver and unclean hands,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      The use by the USPA Parties and the Jordache Parties and any of their respective subsidiaries, affiliates, officers, agents, licensees, employees, attorneys, and all persons in active concert or participation with each of them, of the "solid double horsemen" mark (as depicted in Exhibit 1 hereto) in connection with products listed in

- 2 -

Class 14 (Class 14 being solely limited to watches), Class 18, Class 25 and Class 28 (Class 28 being solely limited to products that pertain to the sport of polo) of the International Schedule of Class of Goods and Services constitutes infringement of PRL's trademark rights in the registered PRL Polo Player Symbol trademarks attached hereto as Exhibit 5. The USPA Parties and the Jordache Parties and any of their respective subsidiaries, affiliates, officers, agents, licensees, employees, attorneys, and all persons in active concert or participation with each of them are thereby permanently enjoined from making any such use of the "solid double horsemen" mark.

2.      The use of the "solid double horsemen" mark with the letters "USPA" underneath (as depicted in the representative images attached hereto as Exhibit 2) by the USPA Parties and the Jordache Parties and any of their respective subsidiaries, affiliates, officers, agents, licensees, employees, attorneys, and all persons in active concert or participation with each of them, in connection with products listed in Class 14 (Class 14 being solely limited to watches), Class 18, Class 25 and Class 28 (Class 28 solely limited to products that pertain to the sport of polo) of the International Schedule of Class of Goods and Services does not constitute an infringement of PRL's trademark rights in the registered PRL Polo Player Symbol trademarks as reflected in Exhibit 5 hereto.

3.      The use of the "outline double horsemen" mark (as depicted in the representative images attached hereto as Exhibit 3) by the USPA Parties and the Jordache Parties and any of their respective subsidiaries, affiliates, officers, agents, licensees, employees, attorneys, and all persons in active concert or participation with each of them, in connection with products listed in Class 14 (Class 14 being solely limited to watches),

- 3 -

Class 18, Class 25 and Class 28 (Class 28 solely limited to products that pertain to the sport of polo) of the International Schedule of Class of Goods and Services does not constitute an infringement of PRL's trademark rights in the registered Polo Player Symbol trademarks as reflected in Exhibit 5 hereto.

    4.   The use of the "outline double horsemen" mark with the letters "USPA" underneath (as depicted in the representative images attached hereto as Exhibit 4) by the USPA Parties and the Jordache Parties and any of their respective subsidiaries, affiliates, officers, agents, licensees, employees, attorneys, and all persons in active concert or participation with each of them, in connection with products listed in Class 14 (Class 14 being solely limited to watches), Class 18, Class 25 and Class 28 (Class 28 solely limited to products that pertain to the sport of polo) of the International Schedule of Class of Goods and Services does not constitute an infringement of PRL's trademark rights in the registered Polo Player Symbol trademarks as reflected in Exhibit 5 hereto.

    5.   The use of the "double horsemen" marks which are attached hereto as Exhibits 1-4 by the USPA Parties and the Jordache Parties do not constitute dilution of PRL's registered Polo Player Symbol trademarks under the relevant provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*

    6.   Each party to this action shall bear its own costs.

Dated: New York, New York
    October 31 , 2005

          SO ORDERED:

          *George B. Daniel*
          George B. Daniels, U.S.D.J.

# EXHIBIT 1









# EXHIBIT 2





18











# EXHIBIT 3











# EXHIBIT 4





# EXHIBIT 5



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

September 01, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *984,005* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *May 14, 1974*
*3rd* RENEWAL FOR A TERM OF *10* YEARS FROM  *May 14, 2004*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office



M. K. CARTER
Certifying Officer

PLAINTIFF'S
EXHIBIT
1A

Int. Cl.: 25

Prior U.S. Cl.: 39

**United States Patent and Trademark Office**

Reg. No. 984,005
Registered May 14, 1974

10 Year Renewal

Renewal Term Begins May 14, 1994

## TRADEMARK
## PRINCIPAL REGISTER



# Ralph Lauren

POLO RALPH LAUREN CORPORATION
(NEW YORK CORPORATION)
650 MADISON AVENUE
NEW YORK, NY 10022, BY CHANGE OF
NAME FROM POLO FASHIONS, INC.
(NEW YORK CORPORATION) NEW
YORK, NY

"RALPH LAUREN" IS THE NAME OF
A PARTICULAR LIVING INDIVIDUAL
WHOSE CONSENT IS OF RECORD.

FOR: SUITS, OVERCOATS, SWEAT-
ERS, TIES, SHIRTS, AND PANTS, IN
CLASS 39 (INT. CL. 25)..

FIRST USE 12-12-1972; IN COMMERCE
12-12-1972.

SER. NO. 72-449,577, FILED 2-23-1973.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on June 14, 1994.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# United States Patent Office

**984,005**
Registered May 14, 1974

## PRINCIPAL REGISTER
### Trademark

Ser. No. 449,577, filed Feb. 23, 1973

## Ralph Lauren

Polo Fashions, Inc. (New York corporation)
40 W. 55th St.
New York, N.Y. 10019

For: SUITS, OVERCOATS, SWEATERS, TIES, SHIRTS AND PANTS, in CLASS 39 (INT. CL. 25).

First use Dec. 12, 1972; in commerce Dec. 12, 1972.

"Ralph Lauren" is the name of a particular living individual whose consent is of record.



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:
### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

August 05, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 1,050,722 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF 20 YEARS FROM   October 19, 1976
1st RENEWAL FOR A TERM OF 10 YEARS FROM   October 19, 1996
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
    PRL USA HOLDINGS, INC.
    A DELAWARE CORPORATION

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

H. L. JACKSON
Certifying Officer

PLAINTIFF'S
EXHIBIT
1B

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,050,722

United States Patent and Trademark Office　Registered Oct. 19, 1976

10 Year Renewal　Renewal Term Begins Oct. 19, 1996

## TRADEMARK
## PRINCIPAL REGISTER

Ralph Lauren

POLO RALPH LAUREN, L.P. (DELA-
WARE LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022, BY CHANGE OF
NAME AND ASSIGNMENT FROM
POLO FASHIONS, INC. (NEW YORK
CORPORATION) NEW YORK, NY

OWNER OF U.S. REG. NO. 741,035
AND OTHERS.

"RALPH LAUREN" IS THE NAME OF
A LIVING INDIVIDUAL WHOSE CON-
SENT IS OF RECORD.

FOR: WOMEN'S CLOTHING—
NAMELY, TOPCOATS, RAINCOATS,
JACKETS, SUIT JACKETS, SUIT COATS,
SPORT COATS, SPORT JACKETS,
BLAZERS, BLOUSES, SHIRTS, SHIRT
JACKETS, PANTS, SKIRTS, DRESSES,
SWEATERS, TEE SHIRTS, HATS AND
SCARVES, IN CLASS 25 (U.S. CL. 39).

FIRST USE 4-10-1974; IN COMMERCE
4-10-1974.

SER. NO. 73-066,492, FILED 10-20-1975.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Mar. 18, 1997.*

COMMISSIONER OF PATENTS AND TRADEMARKS

2

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,050,722

## United States Patent Office

Registered Oct. 19, 1976

### TRADEMARK
Principal Register



Polo Fashions, Inc. (New York corporation)
40 W. 55th St.
New York, N.Y. 10019

For: WOMEN'S . CLOTHING—NAMELY, TOP-COATS, RAINCOATS, JACKETS, SUIT JACKETS, SUIT COATS, SPORT COATS, SPORT JACKETS, BLAZERS, BLOUSES, SHIRTS, SHIRT JACKETS, PANTS, SKIRTS, DRESSES, SWEATERS, TEE SHIRTS, HATS AND SCARVES—in CLASS 25 (U.S. Cl. 39).

First use at least as early as Apr. 10, 1974; in commerce at least as early as Apr. 10, 1974.

Ralph Lauren is the name of a living individual whose consent is of record.

Owner of Reg. No. 984,005 and others.

Ser. No. 66,492, filed Oct. 20, 1975.



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

September 01, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,053,873* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *December 07, 1976*
*1st* RENEWAL FOR A TERM OF *10* YEARS FROM  *December 07, 1996*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:

*PRL USA HOLDINGS, INC.*
*A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER
Certifying Officer



PLAINTIFF'S
EXHIBIT
1 C

Int. Cl.: 9

Prior U.S. Cl.: 26

Reg. No. 1,053,873

United States Patent and Trademark Office

Registered Dec. 7, 1976

40 Year Renewal

Renewal Term Begins Dec. 7, 1996

## TRADEMARK
## PRINCIPAL REGISTER



Ralph Lauren

POLO RALPH LAUREN, L.P. (DELA-
WARE LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022, BY CHANGE OF
NAME AND ASSIGNMENT FROM
POLO FASHIONS, INC. (NEW YORK
CORPORATION) NEW YORK, NY

OWNER OF U.S. REG. NOS. 978,166,
1,021,368 AND OTHERS.

FOR: FRAMES FOR PRESCRIPTION
AND NON-PRESCRIPTION LENSES,
AND COMPLETE SUNGLASSES, IN
CLASS 9 (U.S. CL. 26).

FIRST USE 1-0-1976; IN COMMERCE
1-0-1976.

SER. NO. 73-076,153, FILED 2-25-1976.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Dec. 31, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS

Int. Cl.: 9

Prior U.S. Cl.: 26

## United States Patent Office

Reg. No. 1,053,873
Registered Dec. 7, 1976

### TRADEMARK
Principal Register



Polo Fashions, Inc. (New York corporation)
40 W. 55th St.
New York, N.Y.   10019

For: FRAMES FOR PRESCRIPTION AND NON-PRESCRIPTION LENSES, AND COMPLETE SUN-GLASSES, in CLASS 9 (U.S. CL. 26).

First use January 1976; in commerce January 1976.
Owner of Reg. Nos. 978,166, 1,021,368, and others.

Ser. No. 78,355, filed Feb. 25, 1976.

ABRAM I. SACHS, Supervisory Examiner

J. D. SAMS, Examiner



# THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 05, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 1,203,658 IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF 20 YEARS FROM  *August 03, 1982*
*1st* RENEWAL FOR A TERM OF 10 YEARS FROM  *August 03, 2002*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:

  *PRL USA HOLDINGS, INC.*
  *A DELAWARE CORPORATION*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

H. L. JACKSON

Certifying Officer

PLAINTIFF'S
EXHIBIT

1 D

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,203,658

**United States Patent and Trademark Office**    Registered Aug. 3, 1982

**TRADEMARK**
Principal Register



Polo Fashions Inc. (New York corporation)
40 W. 55th St.
New York, N.Y. 10019

For: SOCKS, in CLASS 25 (U.S. CL 39).
First use Jul. 3, 1980; in commerce Jul. 3, 1980.
Owner of U.S. Reg. Nos. 984,005, 1,050,722 and others.
The name "Ralph Lauren" is that of a living individual whose consent is of record.

Ser. No. 276,389, filed Sep. 2, 1980.

PAUL F. GAST, Primary Examiner



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

#### United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,212,060* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *October 12, 1982*
*1st* RENEWAL FOR A TERM OF *10* YEARS FROM   *October 12, 2002*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer

PLAINTIFF'S
EXHIBIT
1E

Int. Cl.: 3

Prior U.S. Cls.: 51 and 52

**United States Patent and Trademark Office**

Reg. No. 1,212,060
Registered Oct. 12, 1982

**TRADEMARK**
Principal Register



Ricky Lauren and Mark N. Kaplan, Co-Trustees of the Ralph Lauren Trust of 9/21/76 (United States citizens)
c/o Amster, Rothstein and Engelberg
90 Park Ave.
New York, N.Y. 10016, by substitution of co-trustee of
Ricky Lauren and Ezra G. Levin, Co-Trustees of the Ralph Lauren Trust of 9/21/76 (United States citizens)
New York, N.Y.

For: COLOGNE, AFTERSHAVE, AFTERSHAVE BALM, ANTIPERSPIRANT, TOILET SOAP, TALCUM POWDER, TOILET WATER, BODY LOTION, BATH OIL, BODY POWDER AND PERFUME, in CLASS 3 (U.S. Cls. 51 and 52).

First use Feb. 8, 1978; in commerce Feb. 8, 1978.

Ser. No. 172,604, filed Jun. 1, 1978.

M. MERCHANT, Primary Examiner



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

September 01, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,363,542* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *October 01, 1985*

*SECTION 8 & 15*

SAID RECORDS SHOW TITLE TO BE IN:

   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER

Certifying Officer

PLAINTIFF'S
EXHIBIT

1F

Int. Cl.: 27

Prior U.S. Cl.: 42

## United States Patent and Trademark Office

Reg. No. 1,363,542
Registered Oct. 1, 1985

### TRADEMARK
### PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: RUGS, IN CLASS 27 (U.S. CL. 42).
FIRST USE 4-11-1984; IN COMMERCE
4-11-1984.

"RALPH LAUREN" IS THE NAME OF A
LIVING INDIVIDUAL WHO'S CONSENT IS OF
RECORD.

SER. NO. 533,449, FILED 4-22-1985.

ANDREW N. FRIEDMAN, EXAMINING AT-
TORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

**United States Patent and Trademark Office**

**August 31, 2005**

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,364,971* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM *October 08, 1985*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

*P. R. Grant*

**P. R. GRANT**
**Certifying Officer**



PLAINTIFF'S
EXHIBIT
1G

Int. Cl.: 42

Prior U.S. Cl.: 101

Reg. No. 1,364,971

## United States Patent and Trademark Office   Registered Oct. 8, 1985

### SERVICE MARK
### PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: RETAIL DEPARTMENT STORE SERV-
ICES, IN CLASS 42 (U.S. CL. 101).
FIRST USE 3-15-1980; IN COMMERCE
3-15-1980.
OWNER OF U.S. REG. NOS. 990,395, 1,209,207
AND OTHERS.

"RALPH LAUREN" IS THE NAME OF A
PARTICULAR LIVING INDIVIDUAL WHOSE
CONSENT TO THE USE AND REGISTRATION
OF HIS NAME IS ON RECORD.

SER. NO. 503,283, FILED 11-13-1984.

ELAINE PARTHEMOS, EXAMINING ATTOR-
NEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 11, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,378,247* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *January 14, 1986*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DELAWARE CORP.*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office



T. WALLACE
Certifying Officer



PLAINTIFF'S
EXHIBIT
1 H

Int. Cl.: 25

Prior U.S. Cl.: 39.

Reg. No. 1,378,247.

## United States Patent and Trademark Office. Registered Jan. 14, 1986

### TRADEMARK
### PRINCIPAL REGISTER



POLO FASHIONS INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: MEN'S AND WOMEN'S WEARING AP-
PAREL AND ACCESSORIES, NAMELY, T-
SHIRTS, SWEATSHIRTS, SWEATERS, JACK-
ETS, PANTS, WIND-RESISTANT JACKETS, IN
CLASS 25 (U.S. CL. 39).

FIRST USE 0-0-1975; IN COMMERCE
0-0-1975.

THE NAME "RALPH LAUREN" IS THE
NAME OF A LIVING INDIVIDUAL WHOSE
CONSENT IS OF RECORD.

SER. NO. 546,304, FILED 7-3-1985.

CRAIG K. MORRIS, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

September 01, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,447,699* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20 YEARS FROM   July 14, 1987*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER
Certifying Officer



PLAINTIFF'S
EXHIBIT
1  I

Int. Cl.: 27

Prior U.S. Cls.: 20 and 42

## United States Patent and Trademark Office

Reg. No. 1,447,699
Registered July 14, 1987

## TRADEMARK
### PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

    FOR: RUGS AND WALLPAPER, IN CLASS 27
(U.S. CLS. 20 AND 42).
    FIRST USE 12–6–1983; IN .COMMERCE
12–6–1983.

OWNER OF U.S. REG. NOS. 1,053,873, 1,364,971
AND OTHERS.
    THE NAME IN THE MARK REFERS TO A
LIVING INDIVIDUAL WHOSE CONSENT IS
OF RECORD.

    SER. NO. 633,722, FILED 12–4–1986.

PAUL F. GAST, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,447,542* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *July 14, 1987*

*CANCELLED SECTION 8*
SAID RECORDS SHOW TITLE TO BE IN:
   *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer

PLAINTIFF'S
EXHIBIT
1 J

Int. Cl.: 20

Prior U.S. Cl.: 32

## United States Patent and Trademark Office

Reg. No. 1,447,542
Registered July 14, 1987

### TRADEMARK
### PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: RATTAN AND WICKER FURNITURE
AND PILLOWS, IN CLASS 20 (U.S. CL. 32).

FIRST USE 5-31-1985; IN COMMERCE
5-31-1985.
OWNER OF U.S. REG. NOS. 1,053,873, 1,364,971
AND OTHERS.

SER. NO. 634,452, FILED 12-9-1986.

PAUL F. GAST, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 29, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,448,580* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *July 21, 1987*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. SWAIN
Certifying Officer

PLAINTIFF'S
EXHIBIT
1K

Int. Cl.: 24

Prior U.S. Cl.: 42

## United States Patent and Trademark Office

Reg. No. 1,448,580
Registered July 21, 1987

## TRADEMARK
## PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: TOWELS, SHEETS, PILLOW CASES,
PILLOW SHAMS, BED SKIRTS, COMFORTERS,
BLANKETS, COMFORTER AND BLANKET
COVERS, SHOWER CURTAINS, TABLE-
CLOTHS, NAPKINS, TEXTILE PLACEMATS

AND FABRICS FOR HOUSEWARES, IN CLASS
24 (U.S. CL. 42).

FIRST USE 10-1-1983; IN COMMERCE
10-1-1983.

OWNER OF U.S. REG. NOS. 1,053,823, 1,366,971
AND OTHERS.

SER. NO. 633,668, FILED 12-4-1986.

PAUL F. GAST, EXAMINING ATTORNEY.



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

#### United States Patent and Trademark Office

August 29, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,448,673* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *July 21, 1987*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. SWAIN
Certifying Officer



PLAINTIFF'S
EXHIBIT
1L

Int. Cl.: 27

Prior U.S. Cls.: 37 and 42

## United States Patent and Trademark Office

Reg. No. 1,448,673

Registered July 21, 1987

## TRADEMARK
## PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPORATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: RUGS AND WALLPAPER, IN CLASS 27 (U.S. CLS. 37 AND 42).

FIRST USE 12-6-1983; IN COMMERCE 12-6-1983.

OWNER OF U.S. REG. NOS. 1,053,873, 1,364,971 AND OTHERS.

SER. NO. 633,721, FILED 12-4-1986.

PAUL F. GAST, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 29, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,483,560* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *April 05, 1988*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. SWAIN
Certifying Officer

PLAINTIFF'S
EXHIBIT
1M

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,483,560

## United States Patent and Trademark Office

Registered Apr. 5, 1988

### TRADEMARK
### PRINCIPAL REGISTER



POLO PASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: FURS, NAMELY, COATS, JACKETS
AND STOLLS, IN CLASS 25 (U.S. CL. 39).

FIRST USE 0-0-1976; IN COMMERCE
0-0-1976.
OWNER OF U.S. REG. NO. 1,363,459 AND
OTHERS.

SER. NO. 654,574, FILED 4-13-1987.

CRAIG K. MORRIS, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 1,485,359 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF 20 YEARS FROM   April 19, 1988
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
   PRL USA HOLDINGS, INC.
   A DE CORP

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer



PLAINTIFF'S
EXHIBIT
1N

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,485,359

## United States Patent and Trademark Office
Registered Apr. 19, 1988

### TRADEMARK
### PRINCIPAL REGISTER



POLO FASHIONS, INC. (NEW YORK CORPO-
RATION)
40 WEST 55TH STREET
NEW YORK, N.Y. 10019

FOR: MENS', WOMENS', CHILDRENS' AND
ATHLETIC SHOES, IN CLASS 25 (U.S. CL. 39).

FIRST USE 0-0-1977; IN COMMERCE
0-0-1977.
OWNER OF U.S. REG. NO. 984,005 AND
OTHERS.

SER. NO. 676,457, FILED 8-3-1987.

JANE MCCABE, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 30, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 1,489,397 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF 20 YEARS FROM  May 24, 1988
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:

PRL USA HOLDINGS, INC.
A DE CORP

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER
Certifying Officer

PLAINTIFF'S
EXHIBIT

10

Int. Cl.: 24

Prior U.S. Cls.: 20 and 42

Reg. No. 1,489,397

## United States Patent and Trademark Office

Registered May 24, 1988.

### TRADEMARK
### PRINCIPAL REGISTER

# Ralph Lauren

POLO RALPH LAUREN CORPORATION (NEW YORK CORPORATION)
40 WEST 55TH STREET
NEW YORK, NY 10019

FOR: TOWELS, SHEETS, PILLOW CASES, PILLOW SHAMS, BED SKIRTS, COMFORTERS, BLANKETS, COMFORTER AND BLANKET COVERS, SHOWER CURTAINS, TABLECLOTHS, NAPKINS, PLACEMATS, IN CLASS 24 (U.S. CLS. 20 AND 42).

FIRST USE 10-1-1983; IN COMMERCE 10-1-1983.

OWNER OF U.S. REG. NOS. 1,053,873, 1,363,540 AND OTHERS.

THE LINING AND/OR STIPPLING SHOWN IN THE MARK ON THE DRAWING IS FOR SHADING PURPOSES ONLY, AND DOES NOT FORM COLOR.

THE NAME THAT APPEARS IN THE MARK IDENTIFIES A LIVE INDIVIDUAL WHOSE CONSENT IS OF RECORD.

THE MARK CONSISTS OF THE WORDS "RALPH LAUREN" AND A FANCIFUL REPRESENTATION OF A POLO PLAYER ASTRIDE A HORSE.

SER. NO. 660,018, FILED 5-11-1987.

DAVID C. REIHNER, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,512,754* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20 YEARS FROM  November 15, 1988*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer

PLAINTIFF'S
EXHIBIT
1 P

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,512,754

United States Patent and Trademark Office    Registered Nov. 15, 1988

## TRADEMARK
## PRINCIPAL REGISTER



POLO FASHIONS INC. (NEW YORK CORPO-
RATION)
40 W. 55TH ST.
NEW YORK, NY 10001

FOR: CLOTHING — NAMELY, SUITS,
SLACKS, TROUSERS, SHORTS, WIND-RESIST-
ANT JACKETS, JACKETS, BLAZERS, DRESS
SHIRTS, KNIT SHIRTS, SWEATSHIRTS,
SWEATERS, HATS, BELTS, SOCKS, BLOUSES,
SKIRTS, COATS AND DRESSES, IN CLASS 25
(U.S. CL. 39).

FIRST USE 12-12-1972; IN COMMERCE
12-12-1972.

OWNER OF U.S. REG. NOS. 984,005, 1,050,722
AND OTHERS.

THE LINING IN THE DRAWING DOES NOT
INDICATE COLOR.

SER. NO. 334,146, FILED 10-26-1981.

PAMELA RASK, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 10, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 2,085,471 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *August 05, 1997*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:

   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office



M. K. CARTER
Certifying Officer



PLAINTIFF'S
EXHIBIT

18

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No. 2,085,471

## United States Patent and Trademark Office

Registered Aug. 5, 1997

### SERVICE MARK
### PRINCIPAL REGISTER



POLO RALPH LAUREN, L.P. (DELAWARE
LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022

FOR: PROVIDING INFORMATION IN THE
FIELD OF FASHION, FRAGRANCE, LIFE-
STYLE AND OTHER TOPICS OF GENERAL
INTEREST BY MEANS OF A GLOBAL COM-
PUTER NETWORK, IN CLASS 42 (U.S. CLS. 100
AND 101).

FIRST USE 11-1-1995; IN COMMERCE
11-1-1995.

OWNER OF U.S. REG. NOS. 1,354,971 AND
1,364,971.

SER. NO. 75-060,269, FILED 2-20-1996.

M. E. DODSON, EXAMINING ATTORNEY



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 2,823,094 IS
CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION ISSUED BY
THE UNITED STATES PATENT AND TRADEMARK OFFICE WHICH
REGISTRATION IS IN FULL FORCE AND EFFECT.

REGISTERED FOR A TERM OF 10 YEARS FROM  March 16, 2004
SAID RECORDS SHOW TITLE TO BE IN:  Registrant

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. Grant

P. R. GRANT
Certifying Officer





# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 29, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION 2,013,947 IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *November 05, 1996*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P.  SWAIN
Certifying Officer

PLAINTIFF'S
EXHIBIT
1 S

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,013,947
Registered Nov. 5, 1996

## TRADEMARK
## PRINCIPAL REGISTER



POLO RALPH LAUREN, L.P. (DELAWARE
LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022

FOR: INFANTS AND CHILDRENS CLOTH-
ING, NAMELY, LAYETTES, CLOTH BIBS,
SLIPPERS, SLEEPWEAR, UNDERWEAR,
ROMPERS, SHORTS, SHIRTS, COVERALLS,

PANTS, SOCKS, BOOTIES, IN CLASS 25 (U.S.
CLS. 22 AND 39).
FIRST USE 12-6-1994; IN COMMERCE
12-6-1994.
OWNER OF U.S. REG. NOS. 1,050,722, 1,485,359
AND OTHERS.

SER. NO. 75-042,406, FILED 1-5-1996.

HENRY S. ZAK, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 31, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *2,052,315* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM   *April 15, 1997*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *PRL USA HOLDINGS, INC.*
   *A DE CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer

PLAINTIFF'S
EXHIBIT
1 T

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

Reg. No. 2,052,315

United States Patent and Trademark Office    Registered Apr. 15, 1997

## TRADEMARK
### PRINCIPAL REGISTER



POLO RALPH LAUREN. L.P. (DELAWARE LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022

FOR: CLUTCHES, SHOULDER BAGS, COSMETIC BAGS SOLD EMPTY, TOTE BAGS, SADDLE BAGS, BACKPACKS, GYM BAGS, DUFFLE BAGS, TRAVEL BAGS, ROLL BAGS, SLING BAGS, GROOMING KITS SOLD EMPTY, SUIT BAGS, TIE CASES, SATCHELS, POLE BAGS, GARMENT BAGS FOR TRAVEL,

COIN PURSES, DRAWSTRING POUCHES, OVERNIGHT BAGS, WALLETS AND KEY CASES, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 12-30-1975; IN COMMERCE 12-30-1975.

OWNER OF U.S. REG. NOS. 1,378,247, 1,512,754 AND OTHERS.

SER. NO. 75-057,170, FILED 2-13-1996.

M. R. BODSON, EXAMINING ATTORNEY



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

August 05, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *2,077,082* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *July 08, 1997*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
  *PRL USA HOLDINGS, INC.*
  *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

H. L. JACKSON

Certifying Officer

PLAINTIFF'S
EXHIBIT
1 ∪

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

Reg. No. 2,077,082

United States Patent and Trademark Office    Registered July 8, 1997

## TRADEMARK
### PRINCIPAL REGISTER



POLO RALPH LAUREN, L.P. (DELAWARE
    LIMITED PARTNERSHIP)
650 MADISON AVENUE
NEW YORK, NY 10022

   FOR: CLUTCHES, SHOULDER BAGS, COS-
METIC BAGS SOLD EMPTY, TOTE BAGS,
SADDLE BAGS, BACKPACKS, GYM BAGS,
DUFFLE BAGS, TRAVEL BAGS, ROLL BAGS,
SLING BAGS, GROOMING KITS SOLD
EMPTY, SUIT BAGS, TIE CASES, SATCHELS,
GARMENT BAGS FOR TRAVEL, COIN
PURSES, DRAWSTRING POUCHES, OVER-

NIGHT BAGS, WALLETS AND KEY CASES, IN
CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).
   FIRST USE 12-30-1975; IN COMMERCE
12-30-1975.
   OWNER OF U.S. REG. NOS. 1,067,698, 1,914,205
AND OTHERS.
   THE NAME "RALPH LAUREN" IDENTIFIES
A LIVING INDIVIDUAL WHOSE CONSENT IS
OF RECORD.

   SER. NO. 75-057,171, FILED 2-13-1996.

HENRY S. ZAK, EXAMINING ATTORNEY

# Exhibit I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

PRL USA HOLDINGS, INC.,                          MEMORANDUM DECISION
                                                      AND ORDER
                                                  99 CV 10199 (GBD)

          -against-

                          Plaintiff,

UNITED STATES POLO ASSOCIATION, INC.,
UNITED STATES POLO ASSOCIATION
PROPERTIES, INC., JORDACHE, LTD., LV
ENTERPRISES, INC. and UNITED STATES
POLO ASSOCIATION, LTD.,

                          Defendants.

----------------------------------------x

GEORGE B. DANIELS, District Judge:

 Plaintiff Polo Ralph Lauren USA Holdings, Inc. ("PRL") brought this trademark

infringement action against United States Polo Association, Inc. ("USPA"), United States Polo

Association Properties, Inc. ("USPA Properties"), Jordache, Ltd. ("Jordache"), LV Enterprises,

Inc. ("LV") and United States Polo Association, Ltd. ("USPA Ltd.") (collectively the

"defendants") alleging infringement of PRL's Polo Player Symbol trademarks. Plaintiff did not

request monetary damages and instead sought by jury trial injunctive relief to prevent the

defendants from using four double horsemen marks. On October 20, 2005, the jury found (1)

defendants' solid double horseman mark infringed PRL's Polo Player Symbol trademarks; and

(2) defendants' solid double horseman mark with "USPA", outline double horsemen mark, and

outline double horseman mark with "USPA" did not infringe PRL's Polo Player Symbol

trademarks.

 Plaintiff moves for a new trial, pursuant to Rule 59 of the Federal Rules of Civil

Procedure, with respect to the jury's verdict that three of the defendants' four double horseman

marks did not infringe PRL's Polo Player Symbol trademarks. Plaintiff argues that this Court

committed reversible error by "den[ying] Polo Ralph Lauren the full opportunity to establish a likelihood of confusion." Mem. of Law In Support of Plaintiff's Motion for a New Trial ("Mem. of Law in Support") at 2. Plaintiff contends that the Court did so by: (1) excluding evidence relating to two prior trademark infringement adjudications against USPA; (2) failing to instruct the jury that as a twice adjudicated infringer, USPA was obligated to "keep a safe distance" from PRL's trademarks, and was consequently held to a much higher standard of conduct with respect to the adoption of new marks; (3) permitting evidence of conduct or statements made in compromise negotiations in contravention of Federal Rule of Evidence 408; and (4) excluding from evidence an exhibit plaintiff referred to as the "Ralph Rip-Off" document which was created by a partner in the advertising agency hired by Jordache.[1] Plaintiff's motion for a new trial is denied.

## BACKGROUND

At trial, plaintiff sought to prove that defendants' use of four double horsemen marks constituted infringement of PRL's Polo Player Symbol trademarks. Specifically, PRL contended that the defendants' double horsemen marks were confusingly similar to PRL's Polo Player Symbol trademarks. They offered the testimony of three live witnesses to establish a likelihood of consumer confusion. Ms. Buffy Birrittella, an executive vice president in charge of advertising and the design of women's clothes at PRL, testified as to the history, mission and progress of the company and the brand. Birrittella stated her fear that the presence of defendants' double horsemen goods in the market "would lessen the impact of our trademark, the polo player trademark in that it would confuse the customer." (Tr. Oct. 6, 2005 at 227:22-23).

---

[1] Plaintiff contends that PRL was substantially prejudiced by the Court's rulings because "Polo Ralph Lauren had substantial evidence to support a finding of bad faith on the part of the defendants, including, for example, the fact that USPA was a previously twice adjudicated trademark infringer with respect to the Polo Player Symbol trademarks and yet was once again attempting to copy those marks. Polo Ralph Lauren also had evidence such as the "Ralph Rip-Off" document, which showed defendants' true intentions in formulating the double horsemen logos." Mem. of Law in Support at 2.

The plaintiff's second witness, Kathleen Jones Loginovs, a store manager at discount chain Annie Sez, testified that she mistakenly placed some USPA t-shirts, jeans and jean jackets, bearing the solid double horsemen symbol "with the Ralph Lauren merchandise" underneath a "Ralph Lauren is here" sign. (Tr. Oct. 7, 2005 at 407-10). She did this because "I decided that I thought it [USPA] was a division of Polo" and she was confused.[2] Id. at 408:10-16. Finally, plaintiff's expert, Professor Gary T. Ford, presented evidence of a survey he conducted with respect to consumer confusion between plaintiff's Polo Player Symbol and two of defendants' four marks, the solid double horsemen mark and the solid double horsemen mark with "USPA". Professor Ford testified that in a comparison survey conducted in malls, 32.3 percent of consumers who participated in his study believed a garment bearing USPA's solid double horsemen logo was made or associated with PRL. (Tr. Oct. 7, 2005 at 540:16-24). 15.7 percent of the survey participants believed the solid double horsemen with "USPA" was associated with PRL. Id. at 542:8-20. In addition to the testimony of PRL's three witnesses, various pieces of merchandise were introduced into evidence which allowed the jury to conduct a direct visual examination and comparison of PRL and USPA marks on merchandise. Defendants' solid double horsemen mark with "USPA", outline double horsemen mark, and outline double horsemen mark with "USPA" were never marketed or sold to the public.

The defendants called five witnesses at trial in order to support their contention that the four double horsemen marks were not a likely source of consumer confusion with the PRL Polo Player Symbol. In addition, as a further defense, the defendants' contended that PRL had consented to their use of the solid double horsemen mark. Orrin Ingram, chairman of the United

---

[2] On cross-examination Loginovs was shown a shirt bearing the PRL polo pony and a shirt bearing defendants' outline double horsemen without "USPA" and asked whether she found the two marks "confusingly similar." (Tr. Oct. 7, 2005 at 416-417). She stated: "They are similar, but they are not confusingly similar." Id. at 417:7. When asked to compare the PRL polo pony with defendants outline double horsemen with "USPA" underneath, Loginovs testified that she did not find that mark confusingly similar. Id. at 417:8-14.

States Polo Association from 1999 until 2003, testified about the history, mission and progress of the United States Polo Association, and the sport of polo. See, e.g., (Tr. Oct. 6, 2005 at 138:21-24). Ingram also described the development of the USPA's licensing program, USPA Properties, and the four double horsemen marks. Id. at 142:3-11; 148:14-151:1. Phillip Johnson, the defendants' survey expert, challenged both the results and methodology of Dr. Ford's survey evidence, which he compared and contrasted with the results of his own consumer confusion study. Johnson's survey tested all four of the double horsemen marks at issue in this case, as opposed to Ford's survey which only tested the solid double horsemen mark and the solid double horsemen mark with "USPA." Johnson's survey recorded a net confusion rate of: (1) 7.6 percent for the solid double horsemen mark; (2) -1.4 percent (or zero)[3] for the solid double horsemen mark with "USPA"; (3) 1.6 percent for the outline double horsemen mark; and (4) -7.8 percent (or zero) for the outline double horsemen mark with "USPA". (Tr. Oct. 11, 2005 at 789:2-14). Explaining his survey results, Johnson stated: "In my opinion, based on the surveys I have conducted and the testimony I have given, if a statistic is below 10 it would be an indication that there is no significant level of confusion." (Tr. Oct. 18, 2005 at 1685:13-16).

Commenting on Dr. Ford's survey results, Johnson testified that "numbers over 10 percent generally are considered to be possible indicators of confusion; and numbers that go as high as 20 percent at least for surveys are almost always certainly indicative of confusion." (Tr. Oct. 19, 2005 at 1818:21-25). When asked "if you assume that Professor Ford has got it right on the solid double horsemen mark, no USPA where he has 30 percent confusion, you would agree with me, would you not, that that is almost certainly indicative of confusion," Johnson replied

---

[3] Johnson explained that negative percentages are equivalent to zero net confusion when assessing these surveys since a negative number indicates that more consumers found the control garment confusingly similar than the double horsemen mark at issue. See (Tr. Oct. 11, 2005 at 788-89). "When you have a negative number for confusion, it means that there is more confusion in the control cell than there is in the test cell, which means it is a null cell, zero confusion." (Tr. Oct. 18, 2005 at 1684:11-14).

4

"Absolutely." Id. at 1819:2-6.

In an attempt to establish their affirmative defense of acquiescence, the defendants called Lee Sporn, a former vice president for intellectual property and associate general counsel at PRL, who defendants claimed explicitly gave USPA permission to use the solid double horseman mark. The defendants also called Merle Jenkins, the USPA attorney who claimed to have received that expressed permission. Sporn testified that Jenkins showed him embroidery depicting the solid double horsemen mark in "early to mid-1996." (Tr. Oct. 12, 2005 at 816:16-817:1). The USPA filed an application for registration of the double horsemen mark with the United States Patent and Trademark Office in May of 1996. See id. at 820:3-21. Sporn testified that PRL made a conscious decision not to file any opposition to the USPA's registration application during late 1996 and early 1997. See, e.g., id. at 847:4-848:8. On January 28, 2000 PRL did file an opposition with the Patent & Trademark Office. Id. at 899:4-7. Sporn vehemently denied ever giving either verbal or written consent to the defendants to use the solid double horsemen mark. See, e.g., id. at 955:20-956:2.

The defendants called Jenkins who testified about the development of the USPA's sports licensing program when he served as the first president of USPA Properties. See (Tr. Oct. 17, 2005 at 1392-1397). Jenkins also testified about a series of conversations he had with Sporn and PRL in an attempt to develop a USPA mark that "was dissimilar, completely dissimilar even to their eyes [from PRL's]" since "[t]hey [PRL] indicated they were interested in talking further with us." Id. at 1407:9-14. Jenkins testified that he was able to reach an agreement with Sporn over USPA's use of the solid double horsemen mark at a May 3, 1996 meeting. See id. at 1422:4-12. Describing a subsequent conversation over various other disputes and agreements between the parties, Jenkins testified: ". . . the agreement in regard to the double horse stood, and he [Sporn] not only consented to our using it, but he encouraged us to go ahead with our

5

registration and put it in commerce." Id. at 1423:9-12. Jenkins testified that he pressed Sporn to memorialize their agreement in writing, but Sporn said "... go ahead, I can depend on it [the verbal agreement] because he said he had done the same thing with other, on other deals with people they had trademark disputes with ... oral agreements to go ahead and do something and he consented to the use of some they maybe had objected to." Id. at 1424:8-13. When asked if there was "any doubt in your mind that Leo Sporn gave you his consent that you could use the [double horsemen] mark and he would not object ..." Jenkins responded, "[n]one whatsoever." Id. at 1426:8-11.

Finally, the defendants called Clifford Lelonek, President of the United States Polo Association division of Jordache. (Tr. Oct. 14, 2005 at 1181:25-1182:1). Lelonek offered testimony concerning the development of the relationship between USPA and Jordache, including plans that the double horsemen marks would be used on all USPA/Jordache merchandise. (Tr. Oct. 14, 2005 at 1186-88).[4] Lelonek testified that had Jordache been aware of any objection by PRL to the use of the double horsemen marks, Jordache would not have put the marks on a "single garment" nor invested a "single penny" in developing the marks. Id. at 1189:3-9.

Through a special verdict form, the jury unanimously found that "plaintiff proved infringement of its registered *Polo Player Symbol* trademark, by proving by a preponderance of the evidence that defendants' use of the solid double horsemen mark is likely to cause confusion about the source of the products among ordinary consumers." The jury also found that "the defendants [had not] proved the affirmative defense of acquiescence by proving by a

---

[4] "It was my understanding that the double horsemen mark was not an objected-to mark and it was not confusingly similar to any of the marks that Ralph Lauren had .... There were two sources of my understanding. One was Merle Jenkins, who actually gave approval to Jordache for that mark. The other one was the fact that I knew that the mark was advanced for registration to the Patent & Trademark office and that Ralph Lauren did not consciously object to that particular mark." (Tr. Oct. 14, 2005 at 1187:8-19).

preponderance of the evidence that plaintiff actively consented to the defendants' use of the *Solid Double Horsemen* mark." The jury further found that "the plaintiff [had not] proved infringement of its registered Polo Player Symbol trademark, by proving by a preponderance of the evidence that defendants' use of the solid double horsemen mark with USPA, [outline double horsemen mark, or outline double horsemen mark with USPA was] likely to cause confusion about the source of the products among ordinary consumers."

In accordance with the jury's verdict, this Court entered a Final Order and Judgment which ordered, adjudged and decreed: (1) the defendants' use of the solid double horsemen mark "constitutes infringement of PRL's trademark rights in the registered PRL Polo Player Symbol trademarks;" and (2) – (4) the defendants use of the solid double horsemen mark with "USPA," the outline double horsemen mark, and the outline double horsemen mark with "USPA" "does not constitute an infringement of PRL's trademark rights in the registered PRL Polo Player Symbol trademarks."

## MOTION FOR NEW TRIAL

A motion for a new trial pursuant to Rule 59 should be granted only if "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation omitted); *see also Smith v. Lightning Bolt Prod., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988). A "miscarriage of justice" has occurred if "the trial was not fair to the moving party." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983). Any evidentiary errors by the trial court are deemed harmless unless they render the jury's verdict "contrary to the interests of 'substantial justice.'" *Nimely*, 414 F.3d at 399 (quoting Fed. R. Civ. P. 61); *see also Church Insurance Co. v. Trippe Manufacturing Co.*, 2005 WL 3462726 (S.D.N.Y. Dec. 19, 2005). Evidentiary errors are only reversible if they affect a party's substantial rights. *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 224 (2d Cir.

A-72

1999) (citing Fed. R. Evid. 103(a)). In order for an evidentiary ruling to rise to the level of affecting a party's substantial rights, a court must, for example, exclude "a party's primary evidence in support of a material fact, and failure to prove that fact defeats the party's claim." Id. PRL's claims of prejudicial error were neither error nor prejudicial. Therefore, no "miscarriage of justice" occurred which would necessitate a new trial.

**I. Evidence of Prior Infringement Adjudications**

Plaintiff contends that its "ability to demonstrate to the jury USPA's bad faith and serial infringement of the Polo Player Symbol trademarks was substantially impaired" when this Court excluded evidence related to prior infringement adjudications. Mem. of Law in Support at 6. This Court properly excluded evidence related to a separate and distinct USPA trademark at issue in a 1984 lawsuit between the plaintiff and USPA (the "1984 mark"), the opinion of Judge Sand in the 1984 lawsuit, and another separate and distinct trademark at issue in a 2004 arbitration between PRL and the USPA (the "Swedish mark"). This evidence was inadmissible at trial pursuant to the parties own September 5, 2003 Settlement Agreement (the "Settlement Agreement"). Plaintiff claims that the Settlement Agreement between the parties did not bar the admission of that evidence. Paragraph 19(F) of the Settlement Agreement enumerates categories of evidence which "shall not be admissible at trial."[5] Such evidence included: "(ii) any evidence relating to any other graphics, designs, logos, and marks of the USPA Parties . . . ." Paragraph 15 of the Agreement did allow for the admission of the December 6, 1984 Final Order

---

[1] Paragraph 19(F) states, in part:

. . . The parties agree that the following evidence shall not be offered by either party and shall not be admissible at the trial of the Unresolved Claims: (i) any evidence relating to the terms and conditions of this Settlement Agreement; (ii) any evidence relating to any other graphics, designs, logos, and marks of the USPA Parties, including, without limitation, any evidence relating to the graphics, designs, logos and marks of the USPA Parties that were designated "OK" by PRL, which are annexed hereto as Exhibit 10, or are the subject of paragraphs 5(L)-(N) of this Settlement Agreement; (iii) any evidence relating to any deliberations by and/or communications by or among the parties concerning the graphics, designs, logos and marks that are subject of paragraphs 5(L)-(N) of this Settlement Agreement; and (iv) any evidence relating to communications between and among PRL and the various retailers and licensees of the USPA Parties. . . ."

8

Judgment and Decree during the instant litigation.[6]

The prior infringement evidence was excluded to the extent the parties had previously agreed in their Settlement Agreement. The parties' Settlement Agreement resolved many of the issues litigated between the parties, leaving the four double horseman marks as the only remaining issues for trial. Evidentiary agreements entered into by the parties prior to trial are considered a "valuable and integral part of everyday trial practice" and are therefore "routinely honored" by trial courts. See, e.g., United States v. Mezzanatto, 513 U.S. 196, 203 (1995). The evidence pertaining to the other marks, particularly the evidence concerning the 1984 litigation and the Swedish arbitration, was properly excluded under the unambiguous terms of the parties' own Agreement. Pursuant to the language of the Settlement Agreement, this Court excluded "any evidence relating to any other ... marks" except the agreed upon "admission of the December 6, 1984 Final Order Judgment and Decree." The referenced copy which was attached to the Agreement as an exhibit was admitted at trial.

II. The "Safe-Distance" Instruction

Plaintiff also contends that this Court's refusal to give its proffered "safe distance" instruction "set the bar substantially lower than it should have been under the law" since it gave the jury "no legal choice but to treat defendants as first time offenders, and not as the serial infringers they in fact are." Mem. of Law in Support at 9. Plaintiff argues that it was therefore "prevented from fully showing a likelihood of confusion ... and, in particular, the bad faith of defendants." Id. Courts however, are not required to give an instruction to the jury that is not supported by the evidence. See, e.g., Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1989).

_____

[6] Paragraph 15 states, in full:
    Unless otherwise set forth in and specifically provided for by this Settlement Agreement, the USPA Parties and PRL shall comply with the terms of the Court's December 6, 1984 Final Order, Judgment and Decree, a copy of which is annexed hereto as Exhibit 8. That December 6, 1984 Final Order, Judgment and Decree may be offered in evidence in any arbitration proceeding hereunder and in the proceedings described in paragraph 19 herein.

A-74

Here, PRL's "safe distance" jury instruction[7] was not appropriate as requested since the 1984 court ruled that defendant USPA could use an appropriate horseman symbol.[8] The proposed jury charge was neither instructive for the jury on an issue relevant to this case, nor was it consistent with the facts. In the Final Order, Judgment and Decree Judge Sand ruled:

> Nothing contained herein shall be construed to prevent USPA and USPAP from conducting a retail licensing program utilizing . . . . a mounted polo player or equestrian or equine symbol which is distinctive from the PFI [i.e. PRL] polo player symbol in its content and perspective, provided that such symbol is used in conjunction with trade dress . . . . and does not utilize any other trade dress which is likely to cause confusion with . . . Ralph Lauren . . . .
> United States Polo Association, Inc., et al. v. Polo Fashions, Inc., et al., 84 civ 1142, Final Order, Judgment and Decree at 9.C (S.D.N.Y. Dec. 6, 1984).

On the facts as presented, plaintiff's safe distance instruction was not useful to the jury in their determination of whether defendants' marks were "likely to cause confusion about the

---

[7] PRL's Initial Proposed Jury Instruction No. 32, The Duty to keep a Safe Distance – the 1984 Final Order and Judgment – read:

> In the December 6, 1984 Final Order Judgment and Decree (the "1984 Final Order and Judgment"), which has been accepted into evidence in this proceeding, this Court previously found that the USPA defendants were intentional infringers of PRL's registered Polo Player Symbol trademarks and further enjoined them from "using any name, symbol or mark which is confusingly similar" to, among other things, PRL's Polo Player Symbol trademarks.
> You should consider this Court's 1984 Final Order and Judgment in evaluating the USPA Defendants' intent in adopting the double horsemen marks at issue. In addition, under the trademark law, a prior adjudicated infringer of another's trademarks must thereafter keep a safe distance and will be held to a higher standard of conduct with respect to the adoption of a new mark than would have applied in the first instance.
> Because the USPA defendants have previously been adjudicated to have infringed PRL's registered Polo Player Symbol trademarks, you should also consider this Court's 1984 Final Order and Judgment and determine for yourselves whether the USPA defendants have satisfied their obligation to keep a safe distance from PRL's registered Polo Player Symbol trademarks in adopting the double horsemen marks at issue in this case.

Plaintiff's Initial Requests to Charge at 40.

[8] The Court also denied the defendants' proposed jury instruction regarding the 1984 Final Order and Judgment. Defendants' Proposed Jury Instruction No. 3, The 1984 Order, read:

> This litigation is not the first litigation between the USPA and PRL. They were involved in a litigation in the early 1980's, which resulted in this Court issuing an Order in 1984. This Order is known as "res judicata," which means that, unless otherwise instructed, the 1984 Order is conclusive as to the rights of the parties and how they could conduct their respective licensing programs prior to this current litigation. The Order established, among other things, that the USPA has the right to "conduct[] a retail licensing program utilizing . . . a mounted polo player or equestrian or equine symbol which is distinctive from the [PRL] polo player symbol . . . ."

Defendants' Preliminary Proposed Jury Instructions at 3 (internal citations omitted).

10

source of the products among ordinary consumers."[9] The plaintiff was unable to articulate how their proposed instruction might be crafted in such a way as to have meaning to the jury.[10] See (Tr. Oct. 19, 2005 at 1792:17-1797:7). This Court did instruct the jury to consider "the intent of the defendants in adopting the double horsemen mark, i.e. did the defendants know their mark was similar to the plaintiff's, and did the defendants intend to confuse or deceive" as one of nine enumerated factors for the jury's consideration with regard to likelihood of confusion. Id. at 2028:24-2029:2. Similarly, when the Court instructed the jury on the affirmative defense of acquiescence it stated that "in order to invoke the affirmative defense of acquiescence, the defendants must have acted in good faith; i.e., defendants' adoption and use of the double horsemen mark must not have been deliberately for the purpose of confusing consumers and capitalizing on plaintiff's reputation." Id. at 2030:21-25.

The plaintiff now claims that it was somehow prejudiced by not receiving a "safe distance" instruction with regard to the three proposed marks which the defendants' never sold or marketed.[11] Plaintiff cannot demonstrate that it was prejudiced by the denial of its requested

---

[9] In its denial of the plaintiff's requested charge, this Court explained:
This jury has to independently decide whether or not the four horsemen . . . were a violation of the trademark. If it is a violation of the trademark, it doesn't matter how close they came. If it is not a violation of the trademark, it doesn't matter how far away they were. I don't think that that advances any of the other legal instructions that I've given the jury with regard to what their obligation is independently to determine in the first instance. . ." Id. at 1794:16-25.

[10] The Court extensively questioned plaintiff's counsel on this very issue during the October 19, 2005 charging conference and further explained that:
The safe distance instruction . . . I know both sides want some instruction one way or another about the 1984 order -- my inclination at this point is to avoid that altogether as a jury instruction. The parties clearly have laid out for the jury what the order said, what it didn't say. I think that there is a danger that I'm going to unfairly direct the jury's attention to that order if I make any limited instruction with regard to the order. The order is what it is . . . quite frankly, no party here is in a position to argue that the order, their examination of that order itself advances their position by making the comment one way or the other about whether these four horsemen at issue is [sic] confusingly similar. The [1984] court never reviewed that, and the court didn't give any direction with regard to those four marks. It is independently the jury's determination to decide whether those four marks are trademark infringement, whether there was an order or there wasn't an order. If you want to argue that somehow it represents someone's conscious decision to try to skirt the order . . . or proceeding in good faith or bad faith, then you can argue that." (Tr. Oct. 19, 2005 at 1792:17-1797:7).

[11] Plaintiff's revised proposed jury instruction No. 32, The Duty to Keep a Safe Distance – the 1984 Final

11

instruction. Given the jury's finding of infringement with respect to the solid double horseman mark which had been sold, in contrast to their determination that the other three proposed marks were not likely to cause confusion, the denial of a "safe distance" instruction was in no way prejudicial to PRL.[12]

## III. Evidence of Settlement Discussion

Plaintiff contends that it was "severely prejudiced" by the admission of "statements made in settlement discussions for the purpose of achieving a resolution of a dispute" which Rule 408 recognizes "should not thereafter be used against a party if settlement efforts fail." Mem. of Law in Support at 10. However, the evidence which PRL argues was settlement discussions admitted in contravention of Rule 408 was not admitted for a prohibited purpose.[13] The evidence was admitted solely on the issue regarding whether or not plaintiff actively consented to the use of

Order and Judgment – read :

In the December 6, 1984 Final Order, Judgment and Decree (the "1984 Final Order and Judgment"), which has been accepted into evidence in this proceeding, this Court previously found that USPA were intentional infringers of Polo Ralph Lauren's registered Polo Player Symbol trademarks..

Under the trademark law, a prior adjudicated infringer of another's trademarks must thereafter keep a safe distance and will be held to a higher standard of conduct with respect to the adoption of a new mark than would have been applied in the first instance.

Because USPA has previously been adjudicated to have infringed Polo Ralph Lauren's registered Polo Player Symbol trademarks, you should consider this Court's 1984 Final Order and Judgment and determine for yourselves whether USPA has satisfied its obligation to keep a safe distance from Polo Ralph Lauren's registered Polo Player Symbol trademarks in adopting and using the double horseman marks at issue in this case.

See Plaintiff's October 18, 2005 Letter, Ex. B, Proposed Additional Jury Instructions at 21.

[12] Indeed, while this Court did not include plaintiff's proposed charge in its jury instructions, it specifically allowed the plaintiff's to make all of the underlying substantive arguments which they said supported a conclusion that defendants acted in bad faith. See, e.g., id, at 1796:17–1797:4 ("Till allow you to argue that . . . If you want to argue that they had an order, they consciously knew that they should not create a symbol that was going to be confusing, that they should have stayed consciously [away] . . . In any context you want to argue that, I think the instructions I give is consistent." Id.

[13] Rule 408 – Compromise and Offers to Compromise:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. of Evid. 408.

the defendants' solid double horsemen mark. It was not evidence of an attempt to compromise a disputed claim to prove either "liability for or invalidity of . . . the claim or its amount" as prohibited by Rule 408. Rather, the evidence offered by defendants was for the limited purpose of establishing their affirmative defenses of acquiescence and laches. Rule 408 does not require the exclusion of any evidence merely because it is presented in the course of compromise negotiations, or when the evidence is offered for another purpose, i.e. other than proving liability or the amount owed. See also Starter Corporation v. Converse, Inc., 170 F.3d 286, 294 (2d Cir. 1999) (affirming the district court's decision to admit evidence of a prior agreement and negotiations since it was "virtually essential evidence to prove Converse's estoppel claims"). The testimony that plaintiff's representative expressly consented to the use of the solid double horseman mark was admissible in an attempt to prove the acquiescence defense.

Even if it had been error to admit any of this evidence, any such error was clearly not prejudicial. The jury appropriately considered the acquiescence argument made by the defendants with respect to the solid double horseman mark at issue in count one and found in favor of the plaintiffs. There was no evidence presented that plaintiff considered, consented to, or offered as a compromise any of the three marks found by the jury not to be infringing. Since the evidence offered pertained only to the first mark, and not the other three horseman marks, any error could not be prejudicial to the plaintiff because the jury found the defendants' first mark to be infringing.

## IV. The "Ralph Rip-Off" Document

Plaintiff contends that the excluded exhibit referred to by PRL as the "Ralph Rip-Off" document[14] "is highly relevant, admissible as an agent admission, and is in no way unfairly prejudicial." Mem. of Law in Support at 20. This document however, was inadmissible under

---

[14] Throughout this litigation the plaintiff referred to the evidence at issue as the "Ralph Rip-Off" document, while the defendants referred to the same document as the "Lazar Spoof."

the Federal Rules of Evidence.[15]  It was an out-of-court statement created by a non-party without the knowledge, control, or consent of the defendants, which plaintiff offered in order to prove the truth of the statements contained therein.  This Court appropriately precluded the document from use at trial as inadmissible hearsay to which no exception applies.  The ruling regarding this motion *in limine* was neither in error nor prejudicial to plaintiff, and therefore does not constitute grounds for a new trial pursuant to Fed. R. Civ. P. 59.

It is undisputed that this one page document was created in early 2000 by Michael Nowack, a partner at Lazar, Stricker, Nowack & Partners ("Lazar").  Lazar, a non-party advertising firm, was hired to prepare a marketing and advertising presentation for the USPA line of clothing.  The proffered evidence was that when Nowack learned about the present litigation between the parties from Robert Mintz, the CEO of Jordache's licensor, USPA Ltd., he created the document on his own initiative solely as a joke,[16] giving Mintz the only copy.  See Declaration of Michael Nowack at ¶ 3-5, Exhibit Z, Defendants' Memorandum of Law in Support of Their Motion *In Limine* to Preclude the "Lazar Spoof" and Related Testimony ("Nowack Declaration") at ¶ 5-6.  Mintz gave the document to Michaela Sayo Murase, who was the Director of Operations of Jordache's USPA division.  Murase placed the only copy in her desk drawer after Mintz told her she could not hang the document on her wall.  See Transcript of the January 12, 2001 Deposition of Michaela Sayo Murase at 89, 93-95 ("Murase Deposition").  Murase later took the document with her when she was fired from Jordache. Id. at 113-14.  At her deposition, Murase confirmed that she had no knowledge of anyone at Jordache ever

---

[15] The one page document entitled "The Ralph Rip-off" has a background of a polo player on a horse and states:

Everyone knows we're ripping off Ralph.  Including us.
It is the mission of our advertising to deny it by appearing to be true to the sport.
After all, Ralph did rip-off the sport.

[16] In his Declaration, Nowack stated the document was meant to be a "tongue-in-cheek articulation of the exact opposite" of defendants' treatment of PRL's brand and "a whimsical assertion that it was PRL engaged in a rip-off of the sport of polo." Id. at ¶ 5-6.

14

expressing or adopting any of the sentiments set forth in the document.[17] Id. at 96. Nowack stated under oath that he was "never asked by anyone to create the Document, nor was [he] authorized by any of the Defendants to make the statements contained therein." Nowack Declaration at ¶ 7.

This document was not admissible under Rule 801(d)(2) as an admission by a party-opponent. The document cannot be considered a statement by a person authorized by the party to make a statement concerning the subject under 801(d)(2)(C). It was also not a statement by the party's agent concerning a matter within the scope of the agency or employment during that relationship under 801(d)(2)(D), since there is no evidence that the defendants ever requested, adopted, approved of, or were even aware that the document was being created by Nowack. It was clearly not within the scope of the advertising agency's employment to create such a document. Similarly, it was not admissible as the defendants' own statement in an individual or representative capacity pursuant to 801(d)(2)(A), nor a statement in which the defendants manifested an adoption or belief in its truth under 801(d)(2)(B). See generally Nowack Declaration; see also Murase Deposition.

Beyond the fact that the document was inadmissible hearsay, it was further excluded pursuant to Rule 403 since its probative value was "substantially outweighed by the danger of unfair prejudice" and "misleading the jury." Plaintiff sought to argue to the jury that it somehow represented the intent or state of mind of the defendants. However it had little, if any probative value in this case beyond its obvious prejudicial effect. The central issue at trial was whether or

---

[17] Murase's testimony with regard to the "Ralph Rip-Off" document was excluded by the Court in its September 28, 2005 ruling granting defendants' motion to preclude the document and related testimony. Plaintiff sought to offer Murase's testimony concerning her knowledge of the document and her opinions with respect to her former employer's motives concerning PRL. Her proffered testimony was that, in her opinion, "the document represents what we were attempting to accomplish." Her proffered testimony consisted entirely of an after-the-fact opinion that the document represented the defendants' intent. This clearly constituted inadmissible opinion evidence by a disgruntled former Jordache employee who had no admissible factual testimony to support such an opinion. Therefore, Murase's testimony was properly excluded for the same reasons as the document itself – it was wholly inadmissible hearsay, prejudicial, and irrelevant.

A-80

not each of the defendants' four double horsemen marks were "confusingly similar" to the plaintiff's trademarks. Since plaintiff proffered no evidence that the contested document was authored, adopted, or approved by any of the defendants, it was inadmissible under the Federal Rules of Evidence.

### CONCLUSION

The jury's verdict was wholly consistent with the evidence at trial. In fact, plaintiff's claimed prejudicial evidentiary rulings primarily relate to plaintiff's attempt to argue defendants' bad motive or intent, rather than the central focus of the jury – whether use of the marks at issue was "likely to cause confusion about the source of the products among ordinary consumers." Plaintiff has failed to establish that "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." Nimely, 414 F.3d at 392. The jury's verdict with regard to each of the disputed marks was reasonable in light of the evidence presented and the issues they were asked to resolve. Accordingly, plaintiff's motion for a new trial is denied.

Dated: New York, New York
       July 7, 2006

SO ORDERED:

George B. Daniel

GEORGE B. DANIELS
United States District Judge

16