UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES POLO ASSOCIATION, INC.,
and USPA PROPERTIES, INC.,

         Plaintiffs,                  09 Civ. 9476

  -against-                             OPINION

PRL USA HOLDINGS, INC., and
L'ORÉAL USA, INC.,

         Defendants.

------------------------------------------X

**Sweet, D.J.**

      In this trademark action, plaintiffs United States Polo Association, Inc. ("USPA") and USPA Properties, Inc. ("Properties") (collectively, the "USPA Parties" or "Plaintiffs") sought a declaration pursuant to 28 U.S.C. § 2201: (1) that they have the right to license and sell in the United States fragrance products and packaging bearing "U.S. POLO ASSN.," the Double Horsemen Trademark and "1890," and other products bearing the marks identified in Trademark Application Serial Nos. 77/738,105, 77/760,033 and 77/760,071 on the products identified in those applications; (2) that their use and licensing of such fragrance products and packaging does not violate Section 43(a) and (c) of the Lanham Act, 15 U.S.C.

1

§ 1125(a) and (c), nor constitute infringement, dilution or unfair competition with respect to the rights of the defendants PRL USA Holdings, Inc. ("PRL") and L'Oréal USA, Inc. ("L'Oréal") (collectively, the "PRL Parties" or "Defendants"); and (3) that their use and licensing of such fragrance products and packaging does not violate the common law of the State of New York relating to trademark infringement, unfair competition and trademark dilution.

The PRL Parties brought counterclaims for trademark infringement, unfair competition, and trademark dilution under Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), and for common law trademark infringement, trade dress infringement, trademark dilution, unfair competition, unfair and deceptive practices, and misappropriation in violation of the statutory and common law of each state in which the USPA Parties do business, including New York General Business Law Sections 133, 349 and 360-1. The PRL Parties also filed a motion for a preliminary injunction. On consent of the parties, the motion for a preliminary injunction was converted into a request for a permanent injunction.

Following an extensive bench trial, by opinion of May 13, 2011 ("May 2011 Opinion"), the Court denied the USPA

Parties' request for a declaratory judgment and granted the PRL Parties' request for a permanent injunction. (Dkt. No. 80.) The background and procedural history of this litigation is described in the May 2011 Opinion and familiarity with that opinion is assumed.

On November 14, 2011, the PRL Parties moved for the award of attorneys' fees. The instant motion was heard on January 18, 2012.

For the reasons set forth below, the PRL Parties' motion for attorneys' fees is denied.

**The PRL Parties' Motion for Attorneys' Fees is Denied**

1. Legal Standard

A court may award reasonable attorneys' fees to a prevailing party in an action under the Lanham Act if the case is "exceptional." 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorneys' fees to the prevailing party"). The Lanham Act does not define what constitutes an "exceptional case," but the legislative history evinces Congress' intent to include those cases in which the "acts of

3

infringement can be characterized as 'malicious' 'fraudulent' 'deliberate' or 'willful.'" S. Rep. No. 93-1400 (1974), <u>as reprinted in</u> 1974 U.S.C.C.A.N. 7132.

It is well established in the Second Circuit that a finding of willful infringement may render a case "exceptional" such that attorneys' fees may be awarded. <u>See</u> <u>Quaker State Oil Ref. Corp. v. Kooltone, Inc.</u>, 649 F.2d 94, 95 (2d Cir. 1981) (per curiam) (finding of "deliberate and willful" infringement is sufficient to warrant the award of attorneys' fees); <u>Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.</u>, 830 F.2d 1217, 1229 (2d Cir. 1987) ("Of course, deliberate and willful infringement can render a case 'exceptional' and thus support an award of attorneys' fees."), <u>abrogated on other grounds by</u> <u>Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.</u>, 973 F.2d 1033 (2d Cir. 1992); <u>GAKM Res. LLC v. Jaylyn Sales Inc.</u>, No. 08 Civ. 6030, 2009 WL 2150891, at *7 (S.D.N.Y. July 20, 2009) ("Because Defendants willfully infringed Plaintiffs' trademarks, Plaintiffs are entitled to reasonable attorneys' fees"). Indeed, a finding of bad faith infringement requires a court to consider the award of attorneys' fees. <u>Goodheart Clothing Co., Inc. v. Laura Goodman Enters.</u>, 962 F.2d 268, 272 (2d Cir. 1992) ("When bad faith infringement is shown, a district court is authorized to award attorney fees on the basis that an 'exceptional case' has been

4

established, and a district court that fails to consider awarding attorney fees when bad faith is established abuses its discretion") (citing Spring Mills, Inc. v. Ultracashmere House, Ltd., 724 F.2d 352, 357 (2d Cir. 1983)); Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc., 880 F. Supp. 1005, 1026 (S.D.N.Y. 1994) ("a district court that fails to at least consider an award of attorneys fees after a finding of bad faith abuses its discretion" (citation omitted)).

In addition, courts have found that misconduct in litigation may render a case "exceptional" within the meaning of § 1117, including where a plaintiff brings a lawsuit for an improper purpose, where bad faith litigation tactics are evident, or where a plaintiff's claims are meritless. See Juicy Couture, Inc. v. L'Oreal USA, Inc., No. 04 Civ. 7203, 2006 WL 2591478, at *4-*5 (S.D.N.Y. 2006) (collecting cases); see also New Sensor Corp. v. CE Distrib. LLC, 367 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) ("Fraud or bad faith can be established . . . where plaintiff brought suit in bad faith without an investigation of the merits of his claim; plaintiffs claims had no real substance; or plaintiff filed suit as a competitive ploy . . . . Courts in this circuit have also held that bad faith may be found where a lawsuit is utilized for ulterior motives, including business advantage and inhibiting competition.")

5

(citations and internal quotation marks omitted); Guess?, Inc. v. Gold Center Jewelry, 997 F. Supp. 409, 410-12 (S.D.N.Y. 1998) (attorneys' fees awarded where willful infringement was combined with litigation conduct that "caused needless expense for [the other party] and unnecessarily consumed a great deal of the Court's time"), rev'd on other grounds by 158 F.3d 631 (2d Cir. 1998), cert denied sub nom Home Boy 2000 v. Gucci Am., Inc., 525 U.S. 1106 (1999); Mennan Co. v. Gillette Co., 565 F. Supp. 648, 657 (S.D.N.Y. 1983) (awarding attorneys' fees where an inference was warranted that the "suit was initiated as a competitive ploy").

2. Bad Faith Infringement

As noted above, in the May 2011 opinion the Court concluded that the USPA Parties adopted the marks and initial trade dress for fragrance products with the intent "to capitalize on PRL's reputation and goodwill instead of building their own." (Op. 46.) Specifically, with regard to the USPA's intent in adopting its mark, the Court found:

> "Courts and commentators who have considered the question equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 67 (2d Cir. 2000) (citations omitted) (noting inquiry

6

is "whether defendant in adopting its mark intended to capitalize on plaintiff's good will"). "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Starbucks v. Wolfe's Borough Coffee, Inc., 588 F.3d 97 (2d Cir. 2009) (quoting Star Industries, 412 F.3d at 388). Under this factor, "the 'only relevant intent is intent to confuse.'" Id. (quoting 4 McCarthy on Trademarks § 23.113).

Bad faith can be found where prior knowledge of the senior user's mark or trade dress is accompanied by similarities so strong that it seems plain that deliberate copying has occurred. Paddington Corp. v. Attiki Imps. & Distrib., Inc., 996 F.2d 577, 587 (2d Cir. 1993) ("Intentional copying, of course, does not require identical copying. Where the copier references the prior dress in establishing her design with the apparent aim of securing the customers of the other based on confusion, intentional copying may be found.").

Here, USPA was undoubtedly fully familiar with the PRL Parties' marks and trade dress, given the extensive history of trademark litigation between the parties. USPA's intent to capitalize on PRL's reputation and goodwill can be inferred from its decision to adopt a mark that is so strikingly similar to the PRL Polo Player Logo and initially employ the same color and similar trade dress to that used for PRL's most popular fragrance line sold under the Polo Player Logo. (Tr. 55:10-21 (Marino); PRL Parties Exs. 16 and 27.) The explanation given by USPA's President, Mr. Cummings, to explain its initial adoption of similar blue trade dress is not persuasive. Cummings testified that blue packaging was used because USPA had adopted blue trade dress, namely on the inseam and waistband labels and hangtags of certain articles in its apparel lines, and USPA believed that using blue packaging would better enable consumers to identify the product as USPA's. (Tr. 215:8-218:2 (Cummings)).

Notably, USPA could have avoided this situation entirely by choosing a logo that depicts a polo player in a position and from a perspective that differs from

7

>the Polo Player Logo with a more clearly distinct form of packaging (e.g. initially utilizing a different color, non metallic ink, and with no thin matching border edging). But it chose not to do so. That the USPA Parties and their licensee did not have any expertise in purveying fragrances or develop a strategic business plan, a budget, or sufficient funding for advertising; and that they worked with a licensee which would not disclose its name because it was concerned, as USPA was aware, that it might be dragged into a lawsuit with Ralph Lauren and had been unable to find sublicensees due to threat of a trademark action (Tr. 270:22-277:10 (Cummings)) further indicates that the USPA Parties intended to capitalize on PRL's reputation and goodwill--instead of building their own. Therefore, the Court finds that USPA adopted its mark with the intention of capitalizing on PRL's reputation and goodwill. [FN 15]
>
>>FN15. This is distinct from a finding that USPA knowingly acted unlawfully at least with regard to USPA's adoption of the Double Horsemen mark on fragrances. Whether or not the USPA Parties acted in reliance on the 1984 Order and 2006 apparel litigation in adopting the Double Horsemen with regard to fragrances, this is not in tension with the Court's finding that USPA adopted the mark, and for fragrances initially with trade dress that is strikingly similar to the POLO BLUE line, with the intention of capitalizing on PRL's reputation, goodwill, and any confusion between its and the PRL's product.

(Op. 44-46.)

The PRL Parties argue that this finding alone justifies an award of attorneys' fees under 15 U.S.C. § 1117. In opposition, the USPA Parties argue that "where, as here, this litigation is one battle in a larger legal war, the prevailing party should not be permitted to isolate a particular finding

8

from the broader context of the case and claim the extraordinary relief of attorney fees in order to punish the non-prevailing party." (USPA Mem. 3 (Dkt. No. 88) (citation and quotation marks omitted).)

The USPA Parties' argument is without merit. Taken to its logical conclusion, this contention would reward repeat infringers on the theory that each trademark suit was but a successive battle in a larger war. Instead, as articulated above, an award of attorneys' fees may be warranted in a host of cases, including, if not particularly, those in which the parties have an extensive history of litigation or, as here, where an injunction has previously issued. Nor does Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 148 (S.D.N.Y. 2000), upon which the USPA Parties rely, stand for this proposition. Instead, Gidatex, quoting Judge Rakoff in Lurzer GMBH v. Am. Showcase, Inc., 75 F. Supp. 2d 98, 102 (S.D.N.Y. 1998), eschewed an analysis that isolated a finding of willful infringement from the context of a larger case that presented "multifaceted disagreements for which both sides bear blame and as to which neither party comes with unclean hands." While Gidatex and Lurzer correctly noted that the attorneys' fee analysis must be viewed in the context of the larger case, the

9

instant case did not involve ""multifaceted disagreements for which both sides bear blame."

In 1984, Judge Sand found that USPA's mounted polo player logo infringed PRL's Polo Player Logo and prohibited the USPA Parties from using the name POLO in a manner likely to cause confusion with the PRL Parties or using a mounted polo player logo unless distinctive from the Polo Player Logo in content and perspective. <u>U.S. Polo Ass'n, Inc. v. Polo Fashions, Inc.</u>, No. 84 Civ. 1142, 1984 WL 1309, at *10 (Dec. 1984); USPA Ex. 15 ¶¶ 7-9. In the May 2011 Opinion the Court "duly note[d] that the USPA parties have violated the 1984 Order by adopting the infringing marks." (Op. 19.)

Lest it be unclear, the 1984 Order did not, as the USPA Parties contend, grant Plaintiffs any right whatsoever to conduct a licensing program, nor did this Court in the May 2011 Opinion. Instead, both courts recognized the fact that the USPA Parties may, having no judicially granted right to do so, enter the marketplace just as any other may so long as they do not infringe the PRL Parties' marks or otherwise violate the terms of injunctions. Thus, to the contrary, both opinions found that while the USPA Parties may enter the market as any other, their legal ability to do so with respect to their marks will be

10

necessarily more limited than others who have not previously been found to infringe. See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 117-18 (2d Cir. 2008) (discussing utility of "[a]n obligation on the part of a previously adjudicated infringer to maintain a safe distance from infringing the [senior user's] marks" both in crafting injunctions and contempt proceedings and collecting cases); Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 220 (2d Cir. 2003) (recognizing that "a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party, and a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement" (citations and internal quotation marks omitted)); E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277, 309 (S.D.N.Y. 2000) ("[A] court may require an infringer to keep a safe distance away from the margin line and proscribe activities that, standing alone, would have been unassailable. Indeed, otherwise unobjectionable conduct may be enjoined if it constitutes efforts by the defendant to retain at least part of the goodwill originally appropriated from the plaintiff." (citation and internal quotation marks omitted)). In sum, the USPA Parties' contention is without merit.

Similarly, though the Court previously declined to find that "USPA knowingly acted unlawfully at least with regard to USPA's adoption of the Double Horsemen mark on fragrances," Op. 46 n.15, the USPA's argument that its adoption of the marks with blue packaging was "reasonable" is rejected. A grant of attorneys' fees, given the finding that "USPA adopted the mark, and for fragrances initially with trade dress that is strikingly similar to the POLO BLUE line, with the intention of capitalizing on PRL's reputation, goodwill, and any confusion between its and the PRL's product" is within the Court's discretion. See Quaker State Oil Ref. Corp., 649 F.2d at 95; Centaur Commc'ns, Ltd., 830 F.2d at 1229; GAKM Res. LLC, 2009 WL 2150891, at *7; E.G.L. Gem Lab Ltd., 90 F. Supp. 2d at 309.

However, that this Court previously found that the USPA Parties adopted their mark and trade dress with the intent "to capitalize on PRL's reputation and goodwill--instead of building their own" (Op. 46) does not a fortiori require the award of fees. See Coach, Inc. v. We Care Trading Co., Inc., 2001 U.S. Dist. LEXIS 9879, at *48-49 (S.D.N.Y. Jul. 18, 2001) ("a finding of bad faith does not require the court to award attorneys' fees") (citation omitted), vacated in part on other grounds by 67 Fed. Appx. 626 (2d Cir. 2002); Gidatex, 82 F. Supp. 2d at 147 ("The mere existence of a finding of bad faith,

12

however, does not automatically entitle the prevailing party to attorneys' fees." (citation omitted)). While the USPA Parties adopted the marks and packaging with the intent to capitalize on the PRL Parties' reputation and goodwill, there is nothing additionally exceptional about the case at bar. The Court declines, on the basis of the USPA Parties' bad faith infringement, to award attorneys' fees.

3. Litigation Motives and Tactics

The PRL Parties argue that attorneys' fees are warranted on a second independent basis due to:

> the USPA Parties' improper motives for filing a declaratory judgment complaint based on their initial and obviously infringing logo, use of "POLO" and blue packaging, misrepresenting that they had not yet commenced sales, and misrepresenting the reason for retailers' reluctance to accept the product, followed by their rapid change to different packaging upon completion of L'Oreal's first survey. . . .

(PRL Mem. 12 (Dkt. No. 83).) The PRL Parties further contend that in particular the USPA Parties' "bad faith in introducing the blue packaging only to change it after L'Oreal conducted its survey caused L'Oreal to incur additional legal and expert fees." (Id.)

13

Defendants argue that in an analogous situation in <u>Juicy Couture</u>, a court in this district found that attorneys' fees were warranted, explaining:

> So, why did Couture persist? Couture wanted to wring an agreement from Lancome that Couture could enter the cosmetics market with Juicy-branded products. It sought coexistence with Lancome and did not expect that it could defeat Lancome's right to remain in the market. It chose to use litigation to achieve a commercial objective when it had no valid claim of injury. [FN9] Seeking leverage in the negotiation of a licensing agreement or for entry into a new market is not a valid ground for continuing litigation when a party knows that its claims are devoid of merit. Couture acted in bad faith and for an improper purpose from at least the close of fact discovery.
>
> FN9. It was, of course, entirely premature for Couture to bring a declaratory judgment action, since it had not taken sufficient steps towards development of a cosmetics line and had not been threatened with litigation by Lancome.

<u>Juicy Couture</u>, 2006 WL 2591478, at *7.

The USPA Parties no doubt filed the instant action in attempts to adjudicate the lawfulness of their sale of fragrances bearing the Double Horseman mark with the initial blue trade dress. The declaratory action was arguably premature, since the USPA Parties had not taken steps towards development of a fragrance line and had not been threatened with litigation by the PRL Parties. The suit was certainly pre-emptive. However, unlike in <u>Juicy Couture</u>, there is no basis in

14

the record to conclude that the USPA Parties were attempting to wring an agreement from the PRL Parties. Whether due to the 2006 jury verdict in the USPA Parties' favor, the possibility (or, given the similarity of the marks and history between the parties, probability) that the PRL Parties would take action against them, or for some other reason, the USPA Parties' initiated their suit. The USPA Parties' subsequent stipulation not to sell its fragrances in blue trade dress, after the PRL Parties had conducted a study on that packaging, no doubt increased the PRL Parties' costs. Litigation is by its nature tumultuous, and nothing in the foregoing suffices to warrant the imposition of attorneys' fees here. The PRL Parties' additional arguments alleging a misrepresentation in the USPA Parties' pleadings and that the Plaintiffs could not verify that all sales of the blue packaged produces after March 2010 had stopped do not change this result.

The award of attorneys' fees in a trademark action is reserved for the extraordinary case, and the determination of what justifies that extraordinary relief is necessarily a matter of judgment. Juicy Couture, 2006 WL 2591478, at *7; see also Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996); George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1543 (2d Cir. 1992). Were the USPA Parties to be found to

15

violate the broad injunction against future infringement that is issued in conjunction with this opinion, a different result might be warranted.

## Conclusion

For the reasons set forth above, the PRL Parties' motions for attorneys' fees are denied.

It is so ordered.

**New York, NY**
**March  /  , 2012**

_____
ROBERT W. SWEET
U.S.D.J.