UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/21/16
```

-----------------------------------------X

UNITED STATES POLO ASSOCIATION, INC., et
al.,

                    Plaintiffs,

                                                    09 Civ. 9476(RWS)

          - against -                               OPINION

PRL USA HOLDINGS, INC. and L'OREAL USA,
INC.,

                    Defendants.

-----------------------------------------X

A P P E A R A N C E S:

          Attorneys for the Plaintiffs

          OLSHAN FROME WOLOSKY LLP
          65 East 55th Street
          New York, NY 10022
          By:  Kyle C. Bisceglie, Esq.
               Matteo J. Rosseli, Esq.

          Attorneys for Intervenor JRA Trademark Company, Ltd.

          WILSON SONSINI GOODRICH & ROSATI
          1301 Avenue of the Americas, 40th Floor
          New York, NY 10019
          By:  Michael S. Sommer, Esq.
               Jessica L. Margolis, Esq.

          Attorneys for the Defendants

          KELLEY DRYE & WARREN LLP
          101 Park Avenue
          New York, NY 10168
          By:  John M. Callagy, Esq.
               Andrea L. Calvaruso, Esq.
               David I. Zalman, Esq.
               Melissa E. Byroade, Esq.

1

**Sweet, D.J.,**

Plaintiffs United States Polo Association, Inc. and USPA
Properties, Inc., along with Intervenor JRA Trademark Company,
Ltd. (collectively, the "USPA," the "USPA Parties," or the
"Plaintiffs"), have moved for judgment as a matter of law,
seeking an order denying the contempt application filed by
Defendant PRL USA Holdings, Inc. ("PRL" or the "Defendant").
For the reasons set forth below, the motion, treated as one for
summary judgment, is denied.

**Background and Prior Proceedings**

The tangled, 32-year history of litigation between the
parties is set out in detail in the Court's March 6, 2013
Opinion granting contempt sanctions against the USPA. See U.S.
Polo Ass'n Inc. v. PRL USA Holdings, Inc., No. 09 Civ. 9476,
2013 WL 837565, at *1-6 (S.D.N.Y. Mar. 6, 2013) (the "SDNY
Contempt Opinion"). Briefly summarized, the dispute concerns
whether and how the logos used by the USPA, the governing body
for the sport of polo in the United States, infringe on the
horseman logo trademarked by PRL, a major fashion and apparel
company.

The USPA first sued PRL in 1984, seeking a declaratory

2

judgment stating that its merchandise, which included a logo of
a mounted polo player, did not infringe on PRL's horseman logo,
which consists of a mounted polo player riding toward the
viewer, with his mallet raised.   See U.S. Polo Ass'n, Inc. v.
Polo Fashions, Inc., No. 84 Civ. 1142, 1984 WL 1309 (Dec. 6,
1984).   The Honorable Leonard B. Sand issued an injunction (the
"1984 Injunction") which prohibited the USPA from, inter alia,
"using any of the [PRL marks] or any name or mark or symbol
which is confusingly similar thereto, in connection with the
sale . . . of any goods or the rendering of any services."   SDNY
Contempt Opinion, 2013 WL 837565, at *1.   As the Second Circuit
noted, "[w]hile the 1984 Injunction applied to all markets, the
term 'confusingly similar' was not a bright line."   U.S. Polo
Ass'n, Inc. v. PRL USA Holdings, Inc., 789 F.3d 29, 31 (2d Cir.
2015).

    Litigation began again in 2000, when PRL brought a lawsuit
seeking to bar the use of the USPA's name and its logos -
including its "Double Horseman Mark," which features two polo
players riding toward the viewer, with the one in front raising
his mallet - on apparel and related products.   While the parties
reached a settlement agreement which incorporated the 1984
Injunction and set up terms by which the USPA could use its name
and certain logos on apparel, leather goods, and watches, the
parties went to trial on whether four variants of the Double

3

Horseman Mark infringed PRL's logo.  See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., No. 99 Civ. 10199, 2006 WL 1881744, at *5 (S.D.N.Y. July 7, 2006).  After a trial before the Honorable George Daniels, a jury returned a verdict finding that one of the four variants infringed PRL's trademark, but three did not. See id. at *3-4.  The Second Circuit affirmed that judgment in 2008.  See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109 (2d Cir. 2008).

The instant case was filed in 2009, with the USPA Parties seeking a declaratory judgment allowing them to sell fragrance products with featuring the name U.S. POLO ASSN., the Double Horseman Mark, and the number 1890 (for the year the USPA was founded).  On May 13, 2011, after a bench trial, this Court issued an Opinion finding, inter alia, that the USPA's fragrance plan infringed on PRL's marks and that the USPA had acted in bad faith.  U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515 (S.D.N.Y. 2011).  A permanent injunction was issued barring the USPA from using the Double Horseman Mark in the sale of fragrances and beauty products, and from "using the PRL marks or any other name or mark, including the image of one or more mounted polo players, that constitutes a colorable imitation of or is confusingly similar to PRL's Polo Player Logo . . . ." See SDNY Contempt Opinion, 2013 WL 837565, at *4 (the "Fragrance Injunction").  The USPA parties appealed and the Second Circuit

affirmed. U.S. Polo Ass'n v. PRL USA Holdings, Inc., 511 F. App'x 81 (2d Cir. 2013).

In April of 2011, the USPA filed an application with the U.S. Patent and Trademark Office, seeking to use the Double Horseman Mark on eyewear, sunglasses, and related paraphernalia. SDNY Contempt Opinion, 2013 WL 837565, at *5. PRL opposed the registration, and also filed a motion in this Court, arguing that the attempt to use the Double Horseman Logo on eyewear violated the Fragrance Injunction. (Dkt. No. 98.) The motion for contempt was granted by an Opinion dated March 6, 2013, which found that the Fragrance Injunction covered the use of the Double Horseman Mark on eyeglasses and that PRL had shown by clear and convincing evidence that its use amounted to a colorable imitation of PRL's logo. See generally SDNY Contempt Opinion, 2013 WL 837565.

The Second Circuit reversed and vacated that decision on appeal. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 789 F.3d 29 (2d Cir. 2015) (the "Second Circuit Contempt Opinion"). The Opinion held that the contempt decision "requires a market-by-market analysis regarding confusing similarity." Id. at 34. Upon remand, the Court was instructed that in order to issue a finding of contempt, it must be established that 1) a reasonable firm in USPA's position, knowing the context of the Fragrance Injunction, would have been

5

on clear notice that use of the Double Horseman Mark on eyewear
would violate the injunction; and 2) that the finding of
confusing similarity is supported by clear and convincing
evidence.  Id. at 35-36.  The Circuit stated that the current
record could not support either finding.  Id. at 36.

On August 3, 2015, the USPA Parties filed a motion for
judgment as a matter of law, geared solely toward the clear
notice prong.  (Dkt. No. 140.)  PRL filed its opposition papers
on September 17, 2015 (Dkt. No. 146), the USPA Parties replied
on October 8, 2015 (Dkt. No. 148), and the motion was heard on
October 14, 2015.

## Applicable Standard

The Plaintiffs style their motion as one for judgment as a
matter of law, but do not specify what Federal Rule of Civil
Procedure they seek relief under.  Federal Rule Procedure 50(a)
provides for a motion for judgment as a matter of law, but is
applicable only if "a party has been fully heard on an issue
during a jury trial."  The instant proceeding is one for
contempt, in which PRL contends that the USPA parties violated
an injunction entered after a bench trial.  See USPA, 2013 WL
837565 at *1.  This procedural context cannot support a motion
for judgment as a matter of law, which "is inapplicable to non-

6

jury trials." Boyke v. Superior Credit Corp., No. 01-CV-0290, 2006 WL 3833544, at *12 (N.D.N.Y. Dec. 28, 2006). The instant motion will therefore be treated as one for summary judgment under Federal Rule 56(a), and PRL's request to defer or deny the motion in favor of targeted discovery as having been brought under Federal Rule 56(d). See Cruz v. Staley, No. 9:08-CV-1273, 2012 WL 98482, at *3 (N.D.N.Y. Jan. 12, 2012) aff'd, 577 F. App'x 67 (2d Cir. 2014) (denying as premature a motion for judgment as a matter of law that should have been brought as a summary judgment motion, but noting that the Court could have treated it as such); see also Hotel St. George Assocs. V. Morgenstern, 819 F. Supp. 310, 323-34 (S.D.N.Y. 1993) ("For the foregoing reasons, defendants' motion for judgment as a matter of law, which this court has treated as a motion for summary judgment, is granted."); Boyke, 2006 WL 3833544 at *12 (converting improperly-brought motion for judgment as a matter of law into one for judgment on partial findings under Rule 52(c)). The Rule 56 summary judgment standard "mirrors" the requirements for judgment as a matter of law under Rule 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a

7

reasonable jury could return a verdict for the nonmoving party."
Id. at 248. The relevant inquiry on application for summary
judgment is "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law." Id.
at 251-52. A court is not charged with weighing the evidence
and determining its truth, but with determining whether there is
a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y.
City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990)
(quoting Anderson, 477 U.S. at 249).

Summary judgment should only be granted after the nonmoving
party has had "'an opportunity to discover information that is
essential to his opposition.'" Hellstrom v. U.S. Dep't of
Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (quoting Trebor
Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511
(2d Cir. 1989)). Courts have found grants of summary judgment
premature in circumstances where parties have not had "a fully
adequate opportunity for discovery." See, e.g., Berger v.
United States, 87 F.3d 60, 65 (2d Cir. 1996); Sereika v.
Patel, 411 F.Supp.2d 397, 405 (S.D.N.Y. 2006). Where a
nonmovant has shown that it cannot present facts essential to
justify its opposition, the court may defer the motion, deny it,
allow time for additional discovery, or issue any other
appropriate order. Fed. R. Civ. P. 56(d). The decision is

8

committed to the discretion of the district court.  See
Continental Cas. Co. v. Marshall Granger & Co., LLP, 921 F.
Supp. 2d 111, 126-27 (S.D.N.Y. 2013).

## The Motion is Denied

The USPA's motion is limited to the first prong of the
requirements laid out by the Second Circuit in its remand –
whether a reasonable firm in USPA's position would have been on
"clear notice" that use of the Double Horseman Mark on eyewear
violated the Fragrance Injunction.  (See USPA Br., Dkt. No. 141,
at 15.)  Resolution of this issue will necessarily involve a
factual inquiry, rendering summary judgment inappropriate at
this stage.  Cf. Prodigy Servs. Co. v. S. Broad Assocs., 64 F.3d
48, 52-53 (2d Cir. 1995) ("a notice question ordinarily raises a
question of fact inappropriate for resolution by summary
judgment").

Contempt may only be established when the Court's order was
clear and unambiguous, defined as an order that leaves "no
uncertainty in the minds of those to whom it is addressed."
King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).
Although the clarity of the order is based on the ability of a
reader "to ascertain from the four corners of the order
precisely what acts are forbidden," Gucci Am., Inc. v. Weixing

9

Li, 768 F.3d 122, 143 (2d Cir. 2014) (citing King, 65 F.3d at
1058), the practical determination of whether a party did
understand or should have understood a court order to proscribe
specific conduct ordinarily involves a factual inquiry into that
party's situation and the allegedly violative acts.  See, e.g.,
Drywall Tapers and Pointers, Local 1974 v. Local 530, Operative
Plasterers Int'l Ass'n, 889 F.2d 389, 395-96 (2d Cir. 1989)
(marshalling facts to resolve question of whether union knew
injunction applied to its conduct); see also Perez v. Danbury
Hosp., 347 F.3d 419, 424 (2d Cir. 2003) (chiding district court
for adjudicating the clarity of a consent decree in a contempt
proceeding "in a vacuum" and without "reference to the conduct
in question.").

Under the Second Circuit's Opinion, such a factual analysis
is required in this case.  Judge Winter noted that there "is no
record before us as to the application of market-specific
factors to the eyeglass and fragrance/cosmetic markets" and
declared that his Opinion did not preclude a resumption of the
contempt proceedings.  Second Circuit Contempt Opinion, 789 F.3d
at 35.  Similarly, the Opinion states that "at least without an
evidentiary record demonstrating otherwise, the eyeglass and
apparel industries seem closer to each other than either is to
the fragrance/cosmetic market."  Id. at 34 (emphasis added).
PRL must be afforded the opportunity to develop that evidentiary

10

record, rendering summary judgment inappropriate at this stage.

## Conclusion

The USPA's motion for judgment as a matter of law, treated as a motion for summary judgment, is denied pursuant to Federal Rule of Civil Procedure 56(d)(1).

11

It is so ordered.

**New York, NY**
**January 2/ , 2016**

_____
**ROBERT W. SWEET**
**U.S.D.J.**